**McJUNKIN v. HANCOCK et al.**

No. 8679—Opinion Filed Sept. 3, 1918.

Rehearing Denied Dec. 24, 1918.

(176 Pac. 740.)

(Syllabus.)

1. **Conversion—"Conversion."**

Conversion consists in a tortious act by the defendant, by which he deprives the plaintiff of his goods, either wholly, or but for a time.

2. **Same—Right of Action—Requisites in General.**

To maintain the action of trover, there must be either a taking from the owner, or an unwarranted assumption of control and ownership over the thing. or an illegal use or abuse of it, or proof of demand and refusal to surrender.

3. **Same—Purchase of Personal Property in Good Faith—Knowledge.**

The mere purchase of personal property, in good faith, from one who has no right to sell it. is not conversion of it, against the lawful owner. until his title has been made known and resisted.

4. **Same—Taking—Evidence.**

Record examined, and held. that the personal property involved herein was not shown to be taken or interfered with by the defendants in circumstances constituting a conversion thereof.

Error from District Court, Oklahoma

County; Geo. W. Clark, Judge.

Action by D. G. McJunkin against W. E. Hancock, P. A. Janeway, W. T. Funderburk, and others. Judgment for plaintiff against the named defendants, and in favor of the other defendants, and plaintiff brings error. Affirmed.

A. E. Pearson and W. R. Withington, for plaintiff in error.

' 'B. L. Tisinger, for defendants in error W. T. Funderburk and P. A. Janeway.

. John E. Du Mars, for defendants in error .J. A. Williams, A. E. Walker, H. C. Hyde, and D. G. Lamb.

· KANE, J. This was an action for damages for the conversion of a certain Keystone drilling machine, commenced by the' plaintiff in error, plaintiff below, against the defendants in error, defendants below.

. Upon trial the court found that the drilling machine was the property of the plaintiff McJunkin, and entered judgment as follows:

"And the court, after hearing the evidence and arguments of counsel and being fully advised, finds judgment for the plaintiff against the defendant W. E. Hancock for $30, and his part of the costs of this action, and against the defendants P. A. Janeway and W. T. Funderburk for $85, and their part of the costs of this action, but finds for all the other defendants, to wit, H. M. Raupe, I. N. Terrell, D. G. Lamb, A. E. Walker, H. C. Hyde, and J. A. Williams."

. This judgment was rendered by the trial court upon the theory that notwithstanding the rig was the property of the plaintiff, the evidence conclusively shows that it was not taken or interfered with by any of the defendants in such a way as to constitute a conversion thereof. There is no substantial conflict in the evidence on any material question of fact, and the only question of importance presented for review is the one indicated above. In considering this question the defendants, for convenience, may be grouped into three separate sets as follows: (1) J. A. Williams, A. E. Walker, H. C. Hyde, and D. G. Lamb, as representatives of the Oklahoma-Tennessee Oil Company; (2) the same defendants and defendant W. E. Hancock as representatives of the Pre-Historic Oil Company; (3) the defendants Funderburk and Janeway individually. The reason for this classification and the connection of each of these groups of defendants with the property involved will appear from the following statement of facts: It seems that the Oklahoma-Tennessee Oil Company, which held some oil and gas leases on several tracts of land near Willow, in Greer county, entered into a contract with one R. L. Hancock, by the terms of which the latter agreed to drill a well for the oil company for the purpose of testing its acreage as oil and gas property. This contract provided for the use of a National drilling rig belonging to R. L. Hancock, located near Tulsa, Okla., and further provided for the moving of this rig from its reputed location to the leases near Willow, Okla. The Oklahoma-Tennessee Oil & Gas Company agreed to pay the cost of loading the rig, provided it should not exceed $50, and also to pay the freight on a car of rigging, tools, and pipe, to be shipped from Tulsa to Willow. R. L. Hancock did not move the rig referred to in the written contract, but after the lapse of some time telephoned the defendant Williams, asking leave to substitute a Keystone rig, which he said was also owned by him and located at Gotebo, much closer to the leases at Willow. Mr. Williams, who was an officer of the Oklahoma-Tennessee Oil Company, consented to this substitution, and thereupon Mr. Raupe, who was the manager of the oil company, went to Gotebo to see about having the rig loaded, as under the contract the company was obligated to pay for the loading of the same. Raupe found two men, Hagge and Dischman, employed by Hancock in possession of the rig, and under their supervision, it was transported to Willow and set upon one of the leases of the oil company. Hancock always represented to the officers and agents of the oil company that he was the owner of the Keystone rig, and none of the agents of the oil company had any notice to the contrary, until a date which will hereinafter appear. Later R. L. Hancock undertook to sell the rig to the Pre-Historic Oil & Gas Company, of which company the defendants Williams, Hyde, Walker, and the defendant W. E. Hancock, a brother of R. L. Hancock, were stockholders. Under this contract of sale the purchase price of the rig was to be $1,000, which sum was procured by the Pre-Historic Oil & Gas Company by issuing its stock in the sum of $200 to each of the parties last mentioned. Neither the Pre-Historic Oil & Gas Company nor any of its officers or employes attempted to take actual possession of the Keystone rig after the sale, but the same was left in the possession of R. L. Hancock for the purpose of carrying out his drilling contract with the Oklahoma-Tennessee Oil & Gas Company. None of the defendants herein at any time asserted any personal ownership in the rig.

Later W. E. Hancock stated to Mr. Williams that R. L. Hancock was not getting along with his drilling contract in a satisfactory manner, and he proposed to the officers of the Oklahoma-Tennessee Oil & Gas Company that he would get in behind his brother and help him carry out his drilling contract if proper arrangements for compensation for his services could be made. Thereupon it was agreed that if W. E Hancock would assist his brother on the work using his brother's tools and the Keystone rig, the Oklahoma Tennessee Company would pay him $25 per day for his services. Shortly after this the plaintiff McJunkin appeared and claimed to be the owner of the property. The foregoing group of defendants not having any information as to the ownership of the property, except that conveyed to them by R. L. Hancock, neither affirmed nor denied McJunkin's claim, but related to him the facts substantially as hereinbefore summarized. Immediately after this the plaintiff McJunkin, without objection on the part of any of the defendants, took possession of the drilling outfit, locked it up and turned the key over to a Mr. Henry, with directions to look after his interest in the property. At the same time R. L. Hancock placed another lock upon the property and turned the key over to one Ezell, with directions to look after his interest in the property. This ends the connection of the two first mentioned groups of defendants with the property.

The connection of the third group of defendants may be summarized as follows: It seems that during the foregoing stages of the controversy the Tennessee-Oklahoma Oil Company permitted certain of its oil and gas leases to lapse, among them the one upon which the Keystone rig had been erected. Subsequently Messrs. Funderburk and Janeway became lessees of the premises under similar oil and gas leases. The latter gentlemen upon taking possession of the premises found the rig erected on one of their leases and the well drilled to a considerable depth. The rig at this time was being claimed by McJunkin and R. L. Hancock, and the keys to the separate sets of locks thereon were still in the possession of Mr. Henry, representing McJunkin, and Ezell, representing R. L. Hancock. Funderburk and Janeway made known to both custodians of the property their desire to finish the incompleted well, and stated that they would like to hire the rig for that purpose, and that they would pay therefor to whomsoever was finally found to be owner thereof the sum of $10 per day while

so in use. Upon these representations both sets of keys were turned over to Janeway and Funderburk, who immediately took possession of the rig and operated it for a few days, until they were served with written notice signed by both Hancock and McJunkin directing them to cease operating the rig and turn the keys over to one of two attorneys named in the notice. Immediately upon receipt of this notice they ceased operations and delivered the keys to the attorneys as directed in the notice served upon them. This, we think, is a fair summary of the undisputed facts in the case.

From a careful examination of the authorities cited by the attorneys for the respective parties, we are convinced that the court below decided the case correctly. We think the evidence clearly shows conversion on the part of R. L. Hancock, but as he is not a party to the action. we may leave him out of the case, except in so far as his presence may be necessary to explain the connection of the defendants with the property involved. Assuming, as counsel for plaintiff in error have in their brief. that the relations between the individuals named in the first and second group of defendants and their principal were such that each would be liable to the plaintiff in trover if a conversion was proven, we are still of the opinion that the admitted facts fail to show a cause of action in trover. To make out a conversion, there must be proof of a wrongful possession, or of the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use. or of a wrongful detention after demand. Sivils v. Aldridge, 62 Okla. 89, 162 Pac. 198. It is well settled that the act alleged to be a conversion must be positive and tortious. 38 Cyc. 2008. In Spooner v. Holmes, 102 Mass. 503, 3 Am. Rep. 491, Mr. Justice Gray, speaking for the court, says:

"Action of tort * * * cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself, or to deprive the rightful owner of it, or destroyed the property."

In Lee Tung v. Burkhart, 59 Ore. 195, 116 Pac. 1069, the rule is stated as follows:

"To maintain an action for conversion, there must have been, on the part of the defendant, some unlawful assumption of dominion over the personal property involved, in defiance or exclusion of the plaintiff's rights, or else a withholding of the possession under a claim of right or title, inconsistent with that of plaintiff."

In the case at bar neither the Oklahoma-Tennessee Oil Company, nor any of the first group of defendants as its representatives, asserted any ownership or dominion over the property involved, nor did they wrongfully withhold possession thereof after demand. On the contrary, they had every reason to believe, and no doubt did believe, that the instrument purporting to be a bill of sale of the rig from McJunkin to Hancock, exhibited by the latter, was genuine, and that R. L. Hancock was the owner thereof, and had full right as such owner to use the same in the performance of the terms of his drilling contract.

The second group of defendants contend that inasmuch as their principal, the Pre-Historic Oil Company, was merely a purchaser of the rig without any notice, and that it had been wrongfully converted by the seller, they were not guilty of conversion. The rule seems to be that, the mere purchase of personal property, in good faith, from one who had no right to sell it, is not conversion of it, against the lawful owner, until his title has been made known and resisted. This seems to be the decisive principle in so far as the second group of defendants is concerned. Both of these groups of defendants, with the possible exception of W. E. Hancock, seem to have been the innocent dupes of R. L. Hancock's duplicity, and it would be a grave injustice to them to mulct them in damages as for a tortious act, upon the evidence before us. In addition to this, there is another principle which stands in the way of a recovery as for a conversion against Funderburk and Janeway. The court below evidently entered judgment against the defendants Funderburk and Janeway for the amount due the plaintiff as rental for the rig for the time they used it, upon the theory that the custodians placed in charge of the property by the contending claimants, R. L. Hancock and McJunkin, were authorized to hire the same to these defendants for the purpose of completing the test well as hereinbefore stated. As there is evidence reasonably tending to support this theory, this court is not at liberty to disturb the judgment based thereon.

For the reasons stated, the judgment of the court below is affirmed.

All the Justices concur, except TISINGER, J., not participating.