## KELLY v. OLIVER FARM EQUIPMENT SALES CO.

No. 22793.   Oct. 16, 1934.

Simons, McKnight, Simons, Mitchell & McKnight, for plaintiff in error.

Ridings & Drennan, for defendant in error.

PER CURIAM. The Oliver Farm Equipment Sales Company, a corporation, as plaintiff, filed this action in the district court of Grant county against J. S. Kelly and Sam Tedford, as defendants, for the conversion of a plow. The parties will be referred to as they appeared in the trial court.

The petition was in common form, and charged the defendant with jointly converting a plow, which was alleged to be of the value of $275. The defendant Kelly answered

by general denial, and the defendant Tedford answered that the owner, had discarded and abandoned the plow, left it on a vacant lot in the town of Jefferson, and had ceased to exercise any acts of ownership thereover, but had relinquished possession and control thereof, and, that he found it on said vacant lot, and, believing that it had been thrown away and abandoned by the owner, took possession of it, fixed it up, and used it.

The cause was tried to a jury, which returned a verdict in favor of the plaintiff and against each of the defendants for the sum of $265.

Motions for new trial were duly filed by each of the defendants, which were overruled, and judgment entered on the verdict, from which the defendant Kelly appeals.

At the close of the plaintiff's evidence, each of the defendants separately demurred thereto, which demurrers were overruled; and at the close of all the evidence the defendant Kelly moved the court to direct a verdict in his favor, which motion was overruled. Appropriate exceptions were saved, both to the overruling of the demurrer to the evidence and to the motion to direct a verdict. Motion for new trial was duly filed, overruled and exceptions saved.

The petition in error contains nine assignments, but the argument of the plaintiff in error is confined to the one proposition that there is no competent evidence in the record to sustain the verdict and judgment against him, and after a careful examination of the evidence we find that this contention is well taken.

There is no substantial controversy in the evidence. The Oliver Chilled Plow Works, Inc., the predecessor of the plaintiff, owned a disc plow, which, in the year 1927 or 1928, it shipped to Gensman Brothers Hardware Company at Jefferson, Okla., on consignment, as a sample. The hardware company kept the plow in or around its store in Jefferson and used it as a sample until sometime in May, 1929, it closed its store in Jefferson and moved away, and left the plow setting on the lot near the store building, where it remained until March, 1930. The defendant Kelly owned several farms near the town of Jefferson, four of which he rented to the defendant Tedford. Among other things, Kelly was to furnish all machinery, Tedford to work the farms and to get one-third of the crops and Kelly two-thirds. Kelly furnished what was required of him under his contract, among other things, machinery, including a disc plow; but the one furnished by Kelly did not exactly suit Tedford. However, Tedford never complained to Kelly that the disc plow which he had furnished was unsatisfactory. From time to time Tedford saw the plow in question setting in the weeds near the abandoned store building of Gensman Brothers, and one day he inquired from the blacksmith, whose shop was located nearby, as to who was the owner of the plow, and was informed that he did not know, but it had been left by Gensman Brothers when they moved away.

In March, 1930, Tedford removed the plow to one of the farms that he was occupying as a tenant of Kelly. He bought some new parts, amounting in value to the sum of $4.80, and put on the plow, fixed it up, and used it on the farms.

There is no evidence to the effect that Kelly knew anything about his tenant having gotten the plow, nor that the tenant had any authority to act in such transaction for him, nor that Kelly paid any part of the repair thereof. Both Tedford and Kelly deny that Kelly authorized Tedford's act, or that he knew anything about it whatever; nor is there a scintilla of evidence to the effect that the relationship between Tedford and Kelly was other than landlord and tenant.

Some time after Tedford had gotten the plow and fixed it up, Kelly was at the place one day, and in talking about working the ground he told Tedford that he thought it would be a good idea to "one-way" it to kill the weeds, and asked him if he could borrow a one-way plow from some of his neighbors to use for that purpose, and Tedford told him that he had a plow that he had gotten down in town from a weed patch that he could use. He did not tell Kelly exactly where he got it or any of the details of how he got it, and Kelly did not inquire of him. Tedford used the plow to do this work.

Some time after Gensman Brothers moved their store from Jefferson, the agents of the plaintiff began to hunt this plow, and found it in the possession of Tedford on one of Kelly's farms. Upon inquiry from Tedford the agent was informed how he had gotten the plow and was referred to Mr. Kelly. At this point there is some discrepancy, which we deem unimportant, between the testimony of the agent and Tedford, the agent testifying that Tedford told him that Mr. Kelly was to furnish the machinery, and for him to go and see Mr. Kelly, and that he would settle for the plow; while Tedford testified that he offered to pay for the use of the plow and give it back, which was refused, and that he then told the agent

that if he would go down to see Mr. Kelly, he might "accidentally buy it from him."

Two different representatives of the plow company called on Mr. Kelly at different times to collect for the plow, but he refused to pay for it. One of the agents of the plaintiff testified on direct examination that he presented Kelly with a bill for $275, and that Kelly offered to pay him $50. But on cross-examination he said that Kelly offered to buy the plow for $50, which he refused.

The other agent of the plaintiff testified that he told Kelly he wanted settlement for the plow, and that Kelly asked him what it sold for, and he replied something over $200, but that he offered to settle with Kelly for $150, but that Kelly did not like the price, but offered to give him $50 for it, which the agent refused. Kelly denies that he made any offer either to buy or to pay for the plow, and disclaimed any responsibility in the transaction whatsoever.

There is no evidence to the effect that Kelly exercised or attempted to exercise or assumed any dominion over the property, or that he ever had it in his possession, or withheld the same under any claim of right or title.

It is well settled that to make out a conversion there must be proof of a wrongful possession, or of the exercise or assumption of a dominion over personal property in defiance or exclusion of the plaintiff's rights, or else a withholding of possession under claim of right or title inconsistent with that of the true owner. McJunkin v. Hancock et al., 71 Okla. 257, 176 P. 740; Sivils v. Aldridge, 62 Okla. 89, 162 P. 198; Davis v. Howe, 99 Okla. 118, 226 P. 316.

There is no evidence that defendant Kelly instigated, assisted, or co operated with Tedford in taking the plow or withholding the possession of same. Plaintiff here contends that Tedford was the agent of Kelly in this transaction, and was acting within the scope of his agency, and, further, that Kelly received the benefits of the conversion, and that upon both or either of these theories plaintiff was entitled to recover. Neither of these was presented in the court below, as plaintiff charged a joint conversion, and the cause was submitted by the court to the jury on that theory. But, waiving the question of change of theory, there is no evidence to sustain plaintiff's contentions.

The relation of landlord and tenant is entirely different from that of principal and agent, and does not ipso facto create the tenant an agent for the landlord. Freiburg v. Beach Hotel, etc., Co., 63 Tex. 449; Hawley v. Curry, 74 Ill. App. 309.

It is true that one who knowingly benefits by the proceeds of converted property is liable; and this also may be true although he was ignorant or uninformed of the true ownership thereof at the time. But Kelly did not knowingly receive any benefit. He had furnished a disc plow to Tedford, as he was required to do. Tedford made no complaints that the plow was unsatisfactory. Some time after Tedford got the plow Kelly asked him if he could borrow this kind of a plow to do some "one-waying," and Tedford replied that he had found one in a weed patch, but did not tell him anything about the circumstances of how he got it. This would certainly be no notice to Kelly that his tenant had converted a plow belonging to the plaintiff in this case, or anyone else, and the fact that the tenant was going to and did use a plow which he said he found, instead of borrowing one from a neighbor, could not make the landowner liable for its conversion.

It is a settled rule in this court that a verdict based on conflicting testimony will not be disturbed where there is evidence reasonably tending to support the same. Yet, in a case where there is no testimony reasonably tending to support the verdict and judgment, it will be reversed; and it was said by this court in the case of Tate et al. v. Coalgate State Bank et al, 72 Okla. 276, 180 P. 687:

"The clause, where there is evidence reasonably tending to support a verdict, means evidence that is competent, relevant, and material and which to a rational and impartial mind naturally leads or involuntarily tends to lead to a conclusion—to a verdict—for which there is a valid, just, and substantial reason, and not one that is based upon an unfounded suspicion or is the result of a mere chimerical conjecture."

See, also, Page et al. v. Atkins, 86 Okla. 290, 208 P. 807.

We are clearly of the opinion that, as to the defendant Kelly, there was no question of fact for submission to the jury, and the court erred in refusing his motion to direct a verdict in his favor. The judgment appealed from will be reversed. Ordinarily such a disposition of a case is followed by an order remanding it to the court below for a new trial, but, under the peculiar circumstances existing in this case, such order will not be made, as it is apparent from an examination of the record that the plaintiff

could not recover on a second trial on any of the theories contended for by it. Also, it is the duty of a litigant to offer all of the evidence at the first trial which the law permits him to offer, and it is apparent that the plaintiff substantially did this. We are therefore of the opinion that justice will be best served by disposing of the case at this time. Section 549, Okla. Stats. 1931; St-Louis-San Francisco R. R. Co. v. McGivney, 19 Okla. 361, 91 P. 693; Kernodle v. Elder, 23 Okla. 743, 102 P. 138; Page et al. v. Atkins, supra.

The cause is reversed as to the defendant J. S. Kelly, with directions to enter judgment in his favor.

The Supreme Court acknowledges the aid of Attorneys J. H. Maxey, George S. Ramsey, and Mr. Everett Petry in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Maxey and approved by Mr. Ramsey and Mr. Petry, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.