**Edward Leon PFEIFER, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–14369.**

Court of Criminal Appeals of Oklahoma.
April 23, 1969.

Rehearing Denied Nov. 6, 1969.

James H. Duke, Milor & Thomas, Ardmore, for plaintiff in error.

G. T. Blankenship, Atty. Gen., W. Howard O'Bryan, Jr., and Hugh Collum, Asst. Attys. Gen., for defendant in error.

NIX, Judge.

Plaintiff in error, Edward Leon Pfeifer, hereinafter referred to as defendant, was convicted of the crime of Larceny of Domestic Animals in the District Court of Jefferson County, Oklahoma. Defendant's case came on for trial on June 26, 1967, and the jury returned a verdict of guilty and fixed the punishment at five years imprisonment. An appeal of the judgment and sentence imposed on July 12, 1967, was then perfected to this Court.

At the defendant's trial, Don Howard and Paul B. Hammonds testified that they were operators of a feed lot in Jefferson County, Oklahoma, from which 23 branded cattle were taken on June 4, 1966. Upon realizing the theft, they notified the Sheriff, Archie Wirt, and Marvin Turner of the Texas-Southwestern Cattlemen's Association. As a result of an investigation, a truck, which was suspected as being the vehicle in which the stolen cattle were transported, was traced and located at a motel in Marietta, Oklahoma, on the following day. Clyde McGill, Love County Sheriff, along with Jefferson County Sheriff Wirt and Mr. Turner knocked at defendant's motel room where the truck was located, were admitted, and questioned the defendant about the truck.

Ernest Lovett, an investigator for the Oklahoma State Crime Bureau, testified at the trial regarding the pictures taken of the stolen cattle which were admitted at the trial. Jessie Hunter, City Marshal of Ryan, Oklahoma; and Randell Sewell, an Oklahoma Highway Patrolman, testified regarding the identity of the truck in question and its location at the time of the theft. Mr. Jack Jessup testified that he was part owner of the Stockman's Livestock Commission Company in Oklahoma City, and testified regarding his receipt of the cattle in question from the defendant and his subsequent release of the cattle to Don Howard after their identification. Miss Jerry John testified that she was a bookkeeper at the Stockman's Livestock Commission Company at the Oklahoma City Stock Yards, that she knew the defendant, was familiar with his signature, and further testified regarding defendant's depositing the cattle in question with the Stockman Company on June 4, 1966.

It is defendant's single contention on appeal that Oklahoma Peace Officers, in violation of defendant's constitutional rights, solicited from him certain information illegally, and that evidence derived from the illegally obtained information was admitted at his trial to the substantial prejudice of his rights. Defendant contends that the evidence which directed the officers to the Oklahoma City Stock Yards was wrongfully obtained from the defendant. Although there was no evidence admitted in the trial regarding defendant's arrest, defendant in support of his motion to suppress the evidence offered a transcript of the preliminary hearing which indicated that the officers made an illegal arrest for a faulty muffler at his motel room in order to interrogate the defendant, search his room, and seize a stock yard weigh bill. As a result of the defendant's admissions and the weigh bill obtained after the illegal arrest, the officers were able to locate the cattle in Oklahoma City. Defendant submits that the stock yards evidence—testimony of the stock yard employees, Jack Jessup and Jerry Jones, pictures of the cattle, and stock yard documents—were inadmissible and should have been suppressed upon defendant's objection.

It is important to note that the evidence in support of defendant's conviction admitted at his trial does not involve a confession or any admission made by the defendant, nor does it include the weigh bill, which was taken at the time of defendant's original arrest at the motel. Rather, it is defendant's argument that the improper arrest resulted in evidence from which the officers located the stolen cattle and that any evidence surrounding the whereabouts of the cattle is inadmissible as "tainted" by the unlawful conduct of the officers. Defendant cites several cases in support of his proposition, but bases it mainly on

the exclusionary rule and the "fruit of the poisonous tree" concept announced in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

We are unable to accept the contention of the defendant for to do so would suggest an extension of the "fruit of the poisonous tree" concept unsupported by any authority in this jurisdiction, or outside it. To adopt said proposition under the facts in the instant case is not in keeping with the purpose of the exclusionary rule and would hinder competent criminal investigation incommensurate with any benefit to the public or to an innocent accused.

Assuming the illegality of the arrest of defendant, it is to be noted that no evidence directly obtained from his arrest was admitted in his trial. Although defendant subsequently made a confession after being advised of his rights, said confession was not admitted in evidence at his trial. Accordingly, we are not persuaded that the testimony of the stock yard employees and the pictures of the cattle are inadmissable as the fruit of the officer's illegal action.

In Wong Sun v. United States, supra, the United States Supreme Court reversed the conviction before it, holding as follows:

"Hence this is not the case envisioned by this Court where the exclusionary rule has no application because the Government learned of the evidence 'from an independent source,' [citations] nor is this a case in which the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.' [citations] We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the, evidence to which instant objection is made has been come at by exploitation of that illegality or

instead by means sufficiently distinguishable to be purged of the primary taint.'"

This test as to the admissibility in the courtroom of evidence has been adopted by this Court previously in Thompson v. State, Okl.Cr., 438 P.2d 287.

Aside from defendant's objection to all evidence at the trial which is untenable, he specifically objected to certain tangible evidence, namely, pictures of the stolen cattle, pictures of the truck used in their transportation, and certain stock yard documents. To accept defendant's contention in regard to this evidence, it would be necessary to assume that but for the improper arrest the state never would have been able to discover the location of the cattle, photograph them, and locate the stock yard records. We must reject this conclusion since it seems quite apparent that even without the arrest of the defendant at that particular time and place, the state would have been able to locate the stolen cattle otherwise. There is nothing so unique about the weigh bill offered by the defendant or his admissions to the officers to indicate that this alone was the only source to the evidence which was subsequently admitted at the trial. In Killough v. United States, 119 U.S.App.D.C. 10, 336 F.2d 929 (1964), the Circuit Court of Appeals rejected a similar contention as follows:

"The mere fact that the body was discovered at the particular time it was discovered because of Killough's [defendant] disclosure of its whereabouts in his illegally secured confessions is not determinative. We cannot conclude here, * * * that the body would not have been discovered 'but for' Killough's confession, having regard to the evidence here." 336 F.2d at 934.

Likewise, we must reject defendant's contention that the testimony of the stock yard employees, Jessup and Jones, is inadmissible as evidence obtained by the illegal arrest. In Smith v. United States, 117 U.S.App.D.C. 1, 324 F.2d 879 (1964), certiorari denied 377 U.S. 954, 84 S.Ct.

1632, 12 L.Ed.2d 498 (1964), the Court excluded testimony of witnesses from the "fruit of the poisonous tree" concept as follows:

"The fact that the *source* of evidence is 'tainted' by violation of constitutional or statutory provisions has not precluded the use of that evidence in every circumstance. [citations]

"Here no confessions or utterances of the appellants were used against them; tangible evidence obtained from appellants, such as the victim's watch, was suppressed along with the confessions. But a witness is not an inanimate object which like contraband narcotics, a pistol or stolen goods, 'speak for themselves.' The proffer of a living witness is not to be mechanically equated with the proffer of inanimate evidentiary objects illegally seized. The fact that the name of a potential witness is disclosed to police is of no evidentiary significance, per se, since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give. The uniqueness of this human process distinguishes the evidentiary character of a witness from the relative immutability of inanimate evidence." 324 F.2d at 881.

Of further enlightenment on this point is a note in a recent holding of the United States Supreme Court in Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968):

"The exclusion of an illegally procured confession and of any testimony obtained in its wake deprives the Government of nothing to which it has any lawful claim and creates no impediment to legitimate methods of investigating and prosecuting crime. On the contrary, the exclusion of evidence causally linked to the Government's illegal activity no more than restores the situation that would have prevailed if the Government had itself obeyed the law." (392 U.S., at 224, 88 S.Ct., at 2011, 20 L.Ed.2d, at 1052, footnote 8, 9)

Although there is no positive evidence that the state learned of the challenged evidence "from an independant source", it is clear that the connection between the lawless conduct of the peace officers and the discovery of the challenged evidence becomes so attenuated as to dissipate the taint. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307.

We therefore conclude that the testimony of the stock yard employees, the pictures of the stolen cattle, and the stock yards records admitted into evidence at the defendant's trial were "sufficiently distinguishable" from the underlying illegality of defendant's arrest "to be purged of the primary taint." Wong Sun v. United States, supra.

Accordingly, the judgment must be, and the same is affirmed.

BUSSEY, J., concurs.

BRETT, P. J., not participating.