615 So.2d 583 (1993)
PACCAR FINANCIAL CORPORATION and Hawk Recovery Bureau
v.
Don HOWARD.
No. 90-CA-0083.
Supreme Court of Mississippi.
March 11, 1993.
*584 James L. Quinn, Aultman Tyner McNeese & Ruffin, Hattiesburg, for appellant.
Jay L. Jernigan, Hattiesburg, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and McRAE, JJ.
McRAE, Justice, for the Court:
PACCAR Financial Corporation and Hawk Recovery Bureau, non-resident corporations, appeal an adverse jury verdict in a conversion case from the Circuit Court of Perry County. While we find that the circuit court properly granted a jury instruction authorizing recovery on an agency theory, we reverse and remand on the question of damages, finding there is insufficient evidence to support the jury's award.

I.
On September 1, 1983, Kelsey Herrin purchased a 1983 model eighteen-wheel Kenworth truck from Wichita Kenworth, Inc. in Wichita, Kansas.[1] The details of the *585 transaction were incorporated in a security agreement/retail installment contract executed by Herrin and the Kenworth dealer.
The document provided that Herrin pay the total time price of $96,080.55 in forty-eight (48) monthly installments of $1,754.60 each, commencing October 14, 1983. The instrument further provided for payment of late charges if installments were not timely paid and that the dealer or its assigns could repossess the truck if Herrin defaulted. Paragraph 12 of the terms and conditions of the document provided:
Buyer agrees that if seller repossesses the collateral or otherwise obtains possession of it, seller will not be in wrongful possession of any property contained in the collateral or attached to it in which seller does not have a security interest. Seller agrees to make any such property available to buyer to take back at a place reasonably convenient to both parties.
The dealer then assigned the contract to PACCAR.
In April 1985, Herrin was delinquent in payment of installments accruing pursuant to the contract. He made an agreement with Don Howard whereby Howard would assume possession and operation of the truck. Howard apparently agreed to run the truck and assume responsibility for payments, maintenance and repairs of the truck. He confirmed his obligations with Connie Huff, credit representative for PACCAR Financial Corporation (hereinafter PACCAR).
Howard paid the installments due PACCAR for April, May, June and July, 1985. In August, 1985, PACCAR requested the services of Hawk Recovery Bureau (hereinafter Hawk) to repossess the truck. An individual working for Hawk obtained assistance from Perry County Deputy Sheriff McRee for the purpose of finding Howard's residence. Upon their arrival at Howard's house, they informed him that Hawk had come to repossess the truck. Howard was told that the truck would be taken to Dossett Pontiac in Hattiesburg, where it would be parked inside a locked gate. Howard testified that the repo men suggested that he remove his personal belongings from the truck. He removed a suitcase but left other personal belongings behind.
Within the next few days, Howard went to Dossett Pontiac in Hattiesburg, but the truck was not there. He called Huff, the PACCAR credit representative, and was informed that the truck and his remaining personal belongings were at the Kenworth dealer in Wichita, Kansas. Huff testified that she told Howard that he could retrieve his property at that location or PACCAR would make arrangements to return it. Howard stated that when he asked Huff how he was supposed to get his personal possessions back, she replied, "Lots of luck."
A few days later, Howard's attorney called Huff. She testified that she told the attorney that Howard was primarily concerned about some tires that were on the truck, but he had not given her instructions regarding the return of the property.
Huff further testified that PACCAR delivered Howard's personal property to Freeman Windham, an acquaintance of Howard's who lived in Witchita, with the request that he take it to Hattiesburg. Howard testified that when Windham called him, he told him that he did not know what to do with the property since he had already filed the lawsuit. Windham then placed Howard's property in storage in Hattiesburg.
On January 17, 1986, Howard filed his complaint against PACCAR and Hawk. Process pursuant to Miss. Code Ann. § 13-3-57 (1972) via the Secretary of State was completed upon PACCAR and Hawk. Subsequent to filing the complaint, Howard's attorney conferred by telephone with Dennis Opacki, in-house counsel for PACCAR. Opacki, by letter dated June 26, 1986, informed Howard's attorney that Windham had picked up the property and placed it in storage in Hattiesburg.
Receiving no response from his letter, Opacki again wrote to Howard's attorney on August 4, 1986, stating:
I have heard nothing further from you since our telephone conversation of June 26, 1986. Presumably you have contacted your client and he had obtained the *586 materials he was bringing suit over. I would appreciate hearing from you so we can close this matter without having to retain local counsel.
No answer or other response by PACCAR or Hawk was filed in the pending action.
On September 25, 1986, Howard obtained a default judgment against PACCAR and Hawk.
On December 23, 1986, PACCAR's counsel wrote to Howard's attorney referencing a November 14, 1986, telephone conversation confirming that PACCAR had contacted Windham and that Howard's belongings were still in Hattiesburg. The letter noted that Howard's attorney had not returned telephone messages left by the PACCAR attorney.
Receiving no response to the letter dated December 23, 1986, PACCAR's counsel again wrote Howard's attorney on May 20, 1987, indicating that Howard still had not contacted Windham and stating that the pending lawsuit was without merit.
Failing to receive responses to its communications, on September 24, 1987, PACCAR retained counsel in Hattiesburg to inquire about the status of the action. Upon learning that default judgment had been taken, PACCAR promptly moved to aside.[2] PACCAR answered, admitting that it obtained possession of the Kenworth truck, but denying responsibility for Howard's property. PACCAR admitted possession of personal property left in the truck but contended it had inventoried the property and requested Howard, without success, to identify and take possession of all the items.
On September 14, 1989, the case was tried before a jury. Howard introduced a list of personal property which, he asserted, was in the truck on the date it was repossessed, placing a value of $1,576.16 on the goods. Howard attempted unsuccessfully to introduce into evidence the purchase price of four tires he placed on the truck, as well as lost earnings consequential to the repossession.
Upon conclusion of Howard's case, PACCAR's motion for a directed verdict was overruled. Likewise, its request for peremptory instruction was denied.
The case was submitted to the jury. Over PACCAR's objection, Instruction P-7 was granted. This instruction permitted Howard to recover from PACCAR, if the jury found from a preponderance of the evidence that Hawk was the agent of PACCAR, acting in the scope of his employment at the time of the alleged incident, and that Hawk wrongfully had taken items and goods belonging to Howard.
From the jury verdict awarding Howard $25,000, PACCAR and Hawk appeal.

II.
PACCAR first asserts that the trial court erred in denying its motion for a directed verdict, as well as its subsequent request for a peremptory instruction. Any error in failing to grant a directed verdict at the end of the plaintiff's case, however, was waived when PACCAR introduced evidence in its own behalf. Miss.R.Civ.P. 50. See also Patrick v. Michigan National Bank, 220 So.2d 273 (Miss. 1969); Broadhead v. Gatlin, 243 Miss. 386, 137 So.2d 909 (1962).
The effect of this waiver, however, is explained in Clements v. Young, 481 So.2d 263 (Miss. 1985), where we stated:
In both jury and non-jury cases, civil and criminal, we have repeatedly held that where a defending or responding party, following the overruling of a motion for a directed verdict or a motion to dismiss, goes forward with evidence of his own, he waives the right to assign on appeal error in the failure of the trial judge to grant his motion. See, e.g., Ellis v. *587 State, 469 So.2d 1256, 1260 (Miss. 1985); Shavers v. State, 455 So.2d 1299, 1302 (Miss. 1984); Engineering Service Co., Inc. v. Minor, 346 So.2d 916, 918 (Miss. 1977); Illinois Central Railroad Co. v. Perkins, 223 Miss. 891, 915-16, 79 So.2d 459 (1955).
Because it is often misunderstood, this point requires comment. By offering evidence of his own, the defending party in no way waives the right to challenge the sufficiency or weight of the evidence in the event of an adverse judgment. What the waiver rule means is he must proceed on the basis of the evidence before the court at the time the challenge is made and not in the limited state in which it may have been back when the motion to dismiss was made.
Put otherwise, all of these motions  the motion to dismiss, the motion in a jury trial for a directed verdict made at the end of the plaintiff's or movant's case, as well as the request for a peremptory instruction at the end of all of the evidence or a motion for judgment notwithstanding the verdict thereafter, are procedural vehicles for challenging the sufficiency of the plaintiff's or movant's case. Each requires that the court consider all of the evidence before it at the time the motion is offered.

(Original emphasis) Id. 481 So.2d at 268.
The sufficiency of Howard's evidence must therefore be considered on the basis of all the evidence offered, and the court's ruling tested under its denial of PACCAR's request for a peremptory instruction.
We articulated our familiar and well-settled scope of review in Weems v. American Sec. Ins. Co., 450 So.2d 431 (Miss. 1984) by stating:
The request for a peremptory instruction or the subsequent motion for a judgment notwithstanding the verdict tests the legal sufficiency of the evidence supporting the verdict. Either asks the court to hold, as a matter of law, that the evidence is insufficient to support a verdict in favor of the non-movant. Where such a request has been made, the trial court must consider all of the evidence  not just the evidence which supports the non-movant's case  in the light most favorable to the party opposed to the motion. The non-movant must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury's verdict allowed to stand. See, e.g., General Tire and Rubber Co. v. Darnell, 221 So.2d 104, 105 (Miss. 1969); Paymaster Oil Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975); City of Jackson v. Locklar, 431 So.2d 475, 478 (Miss. 1983).
Id. 450 So.2d at 435.
While Howard's short claim for relief is somewhat lacking in specificity, PACCAR and Howard concede that this is an action for conversion of personal property. The tort of conversion has as its genesis the old common law action of trover. The theory of trover was that the defendant, by "converting" a chattel to his own use, appropriated the plaintiff's rights, for which he was required to make compensation. The plaintiff was therefore not required to accept the chattel when it was tendered back to him; and he recovered as his damages the full value of the chattel at the time and place of the conversion. When the defendant satisfied the judgment in trover, the title passed to him, and plaintiff had nothing more to do with it. The effect was that the defendant was compelled, because of his wrongful appropriation, to buy the chattel at a forced sale, of which the action of trover was the judicial instrument. Prosser, The Nature of Conversion, 42 Cornell Law Quarterly 168 (1956-57).
The modern law of conversion emerged when the basic distinctions between the theories of trespass and trover were articulated *588 in Fouldes v. Willoughby 8 M.W. 540, 151 Eng.Rep. 1153 (1841). Prosser and Keeton, Handbook of the Law of Torts, § 14 (5th ed. 1984) explains the Fouldes decision and its effect on the law of conversion as follows:
The defendant wrongfully refused to carry plaintiff's horses on a ferry-boat, and put them off. The plaintiff remained on board, and as a result lost his horses. It was held that this was a trespass, but not a conversion, since there was no interference with the plaintiff's "general right of dominion" over the horses. At about the same time, in an American case, a young lawyer named Abraham Lincoln succeeded in convincing the court that there was no conversion when a horse left with the defendant to be agisted and fed was ridden, on one occasion, for a distance of fifteen miles, since it was not a sufficiently serious invasion of the owner's right.
Following such decisions, the tort of conversion has been confined to those major interferences with the chattel, or with the plaintiff's rights in it, which are so serious, and so important, as to justify the forced judicial sale to the defendant which is the distinguishing feature of the action. Trespass remains an occasional remedy for minor interferences, resulting in some damage, but not sufficiently serious or sufficiently important to amount to the greater tort. In determining the seriousness of the interference, and the justice of requiring the defendant to pay the full value, all of the relevant factors in the case are to be considered. These include the extent and duration of the defendant's exercise and control over the chattel; his intent to assert a right which is in fact inconsistent with the plaintiff's right of control; the defendant's good faith or bad intentions; the extent and duration of the resulting interference with the plaintiff's right of control; the harm done to the chattel; and the expense and inconvenience caused to the plaintiff.
These elements are adopted and explained in Restatement (Second) of Torts, § 222A (1965), Illustrations 5 and 6, as follows:
5. A takes possession of a house and finds B's furniture in it. A removes the furniture to a storage warehouse, stores it in the name of B, and notifies B that he may come and get it. This is not a conversion.
6. The same facts as in Illustration 5, except that A removes the furniture to a warehouse at a distance, so that B is subjected to great inconvenience and expense in recovering it. This is a conversion.
The elements of conversion were set out by this Court in Miss. Motor Finance, Inc. v. Thomas, 246 Miss. 14, 149 So.2d 20 (1963), where we stated:
It is well settled that the acts alleged to constitute a conversion must be positive and tortious. 89 C.J.S. 534, Trover and Conversion § 4, p. 534... .
In McJunkin v. Hancock, 71 Okla. 257, 176 P. 740, the Court said: "To make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand. Sivils v. Aldridge, [62 Okl. 89], 162 Pac. 198." In Spooner v. Holmes, 102 Mass. 503, 3 Am.Rep. 491, Mr. Justice Gray, speaking for the Court said: "Action of tort * * * cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself, or to deprive the rightful owner of it, or destroyed the property." In Lee Tung v. Burkhart, 59 Or. [194] 195, 116 P. 1066, the Court held that in order to maintain an action for conversion, there must have been, on the part of the defendant, some unlawful assumption of dominion over the personal property involved, in defiance or exclusion of the plaintiff's rights, or else a withholding of the possession under a claim of right or title inconsistent with that of plaintiff... .
246 Miss. at 20, 149 So.2d at 23.
In Walker v. Brown, 501 So.2d 358 (Miss. 1987) we stated that "[c]onversion requires *589 an intent to exercise dominion or control over goods which is inconsistent with the true owner's right." Id. at 361.
In the case sub judice, PACCAR employed Hawk to repossess the truck. It is undisputed that Hawk, through its personnel, peaceably obtained possession of the vehicle from Howard. It further is undisputed that Howard was given permission and the opportunity to remove his personal belongings from the truck. Howard related that he was told, and led to believe, that the truck and his property would be taken to Dossett Pontiac in Hattiesburg. The vehicle was removed, not to Hattiesburg, but to the Kenworth dealer in Wichita, Kansas. No one advised Howard of any change in plans. When Howard could not find the repossessed vehicle in Hattiesburg, he called Huff, PACCAR's credit representative, who was unaware that the truck had been repossessed. Howard called back and was told that the vehicle was in Wichita, Kansas. Although these conversations took place only a few days after the August, 1985, repossession, there is nothing in the record showing any significant effort by PACCAR to return the requested property. Howard's attorney called Huff within a week. Huff testified that PACCAR did not intend to keep Howard's property. She further related that Howard's attorney was supposed to call her back and give her instructions as to what to do with the personal property. She heard nothing more of the matter until June, 1986, when PACCAR received notice of the lawsuit.
While PACCAR was not in wrongful possession of Howard's personal property at the time of repossession, we must assess its subsequent actions in the light most favorable to the jury verdict. PACCAR admitted possession of the property when Howard's attorney called shortly after the repossession. Its only excuse for not returning his property was Huff's statement that she was waiting for instructions from Howard's attorney. While this might suffice temporarily, absent further instructions, PACCAR should have made an additional effort to return the property. Instead, without Howard's prior consent or approval, PACCAR placed Freeman Windham in possession of the property and requested that he make delivery to Howard. PACCAR made no effort to ascertain what Windham did with Howard's belongings until approximately ten (10) months after the repossession upon receiving legal notice that the present action had been filed. Under these circumstances, it was not unlikely or unreasonable that a jury might find PACCAR's actions constituted an unlawful detention of the chattels without regard to the fact that original possession was lawfully obtained. Recognizing that, under the original circumstances of this case, one in possession of another's chattels is not ordinarily required to do more than permit the owner to retrieve his property, we cannot close our eyes to the fact that the chattels were removed to Wichita, Kansas, a foreign jurisdiction, far removed from the destination Howard was led to believe they would be taken. While the failure of Howard's attorney to respond to PACCAR's letters subsequent to institution of legal proceedings is neither approved nor condoned, this does not absolve PACCAR from the jury resolution. Upon reviewing the record, we cannot say, therefore, that the trial court erred in denying PACCAR a directed verdict or peremptory instruction.

III.
PACCAR next questions the sufficiency of Howard's pleading to authorize the injection of an agency issue for jury resolution. While Miss.R.Civ.P. 8 abolishes many technical requirements of pleadings, it does not eliminate the necessity of stating circumstances, occurrences, and events which support the proffered claim. Although Miss.R.Civ.P. 15(b) permits trial of issues not raised by the pleadings with the express or implied consent of the parties, the Comment to the Rule states:
[i]t is an invariable principle of practice that the admissible proof in any case must come within the allegations of the pleadings and that it avails nothing to prove what is not charged.
*590 A party, however, is entitled to have jury instructions given regarding all material issues presented in the pleadings or evidence. Glorioso v. Young Men's Christian Association of Jackson, 556 So.2d 293, 295 (Miss. 1989); Barkley v. Miller Transporters, Inc., 450 So.2d 416 (Miss. 1984). Likewise, a party is entitled to have his theory of the case presented to the jury through instructions, provided there is evidence to support it. Alley v. Praschak Mach. Co., 366 So.2d 661 (Miss. 1979). Having reviewed the record, we find, therefore, that despite any deficiencies in the pleadings, there was sufficient evidence introduced at trial to show that Hawk acted as PACCAR's agent to warrant the complained of instruction to the jury.

IV.
Relying on Surrette v. B & M Building Supply, 441 So.2d 551 (Miss. 1983), Hawk argues that the default judgment rendered against it is void because the complaint upon which the judgment was based failed to state a claim upon which relief can be granted. In Surrette, a default judgment, which ordered the enforcement of a materialmen's lien, was declared void because the complaint was so deficient in substance as to negate a cause of action. While the complaint in this case is, indeed, short and concise, we find that there is sufficient compliance with Miss.R.Civ.P. 8 to state a claim for relief.

V.
Finally, Hawk maintains that if the default judgment is valid, the amount of damages awarded by the jury is contrary to the overwhelming weight of credible evidence and a remittitur should be required.
The measure of Howard's damages is the value of the personal property at the time and place of conversion. Masonite Corporation v. Williamson, 404 So.2d 565 (Miss. 1981). Howard claimed that the total value of his personal property in the truck when it was repossessed was $1,576.16. There is no evidence that Howard's allegations that he suffered between $20,000.00 and $25,000.00 in lost wages was placed before the jury. Furthermore, tires valued at $2,224.64, which Howard had mounted on the truck, became fixtures of the collateral and thus the amount expended on them was not recoverable as damages. Miss. Code Ann. § 75-9-314 (1972). We find, therefore, that the jury's award of $25,000.00 is unsupported by the evidence.
While we are authorized, pursuant to Miss. Code Ann. § 11-1-55, to affirm the judgment against Hawk upon condition of remittitur, we believe justice would be better served by remanding the case to the trial court for reconsideration of the damages.

VI.
Having carefully reviewed the record, we find that the circuit court did not err in refusing to grant PACCAR's motion for a directed verdict or a peremptory instruction. Further, the circuit court did not err in granting Jury Instruction P-7. However, finding that the jury's award of $25,000.00 is unsupported by the evidence, we reverse and remand for trial on damages only.
REVERSED AND REMANDED FOR TRIAL ON DAMAGES ONLY.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, ROBERTS and SMITH, JJ., concur.
NOTES
[1] The jury verdict resolved all conflicting facts in favor of Howard. The facts stated are, for the most part, undisputed.
[2] Nothing contained in the order affected that part of the previous judgment of the court against Hawk. However, Hawk's failure to answer or respond to the complaint spawned another motion for, and rendition of, default judgment upon termination of trial testimony and prior to submission of the case to the jury.