Allen E. WHITECHURCH, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-81-744.

Court of Criminal Appeals of Oklahoma.

Jan. 20, 1983.

John P. Zelbst, Lawton, for appellant.

Jan Eric Cartwright, Atty. Gen., State of Okl., Eric Hermansen, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

CORNISH, Judge:

Allen Whitechurch, appellant, was convicted of Manslaughter in the First Degree, After Former Conviction of Two or More Felonies, in Comanche County District Court. He was sentenced to serve twenty (20) years' imprisonment.

The principle issue before this Court is whether the trial court erred in failing to instruct the jury on the appellant's theory of the case, i.e. that he had a right to defend his sister against a felonious attack.

On December 4, 1980, Whitechurch and his sister, Ms. Alexander, were driving to the bank to cash a check. On the way to the bank, Ms. Alexander apparently pulled out in front of a car driven by Robert Helfinstine, the deceased victim. Whitechurch testified that Helfinstine then pulled in front of his sister's car and slowed down. Both vehicles approached a red light and stopped. When Helfinstine stopped his car, he got out and walked back to Ms. Alexander's side of the car and began to verbally insult her. Whitechurch and Ms. Alexander both testified that Helfinstine appeared to be intoxicated. They also stated that Helfinstine pulled a knife out of his pocket and made threatening motions toward Ms. Alexander. At this point, Whitechurch grabbed a hammer and exited the car. Whitechurch then walked to the front of the car and Helfinstine dropped his knife on the ground. When Helfinstine bent down to pick up the knife, Whitechurch kicked him in the chin, causing Helfinstine to fall back and hit his head on the pavement.

After Helfinstine was assisted to his feet, Whitechurch and his sister drove to the bank. Helfinstine drove home and was later taken to the hospital. At the hospital he was treated for minor lacerations and was released. Five days later, on December 9, 1980, Helfinstine was taken to the Veterans Administration Hospital. On December 10, 1980, Helfinstine died from "complications of blunt trauma to the head."

Ms. Marjorie Wooten testified that she was stopped behind Whitechurch's car at the time of the altercation. She stated that she saw Helfinstine get out of his car, walk up to the window of Ms. Alexander's car, and begin yelling at her. Ms. Wooten further testified that Whitechurch got out of the passenger's side of the car with a hammer. Whitechurch walked up to the victim and kicked him in the chin area. She stated that the victim fell to the pavement and hit his head. Once on the ground, Whitechurch allegedly kicked the victim four times in the chest. Ms. Wooten also stated that she did not see the victim holding a knife.

In defense, Whitechurch called several witnesses to corroborate his version of the incident, i.e., that Helfinstine approached his sister hollering obscenities and wielding a knife.

The defense called Harvey Moore, who testified that he saw Helfinstine at Christy's Lounge on the day in question. Moore stated that Helfinstine appeared to be very drunk and hostile. Moore further testified that Helfinstine became very belligerent and threatened him with a knife.

Also called on behalf of the appellant was Officer Lord of the Lawton Police Department. Officer Lord testified that in the course of his investigation of the incident he interviewed Helfinstine at his house. Helfinstine informed Officer Lord that he had been robbed by two men. Helfinstine told Officer Lord that he "recalled being hit on the head and as he was falling to the ground he heard a female voice saying, 'Don't hit him again.' Officer Lord further testified as follows: "Mr. Helfinstine advised me that during the altercation that he pulled a knife he described as a Barlow knife, approximately three inch blade. He believed he cut the individual on the left leg."

The defense also called John Blair, who testified that he was standing across the street at the time of the altercation. Blair stated that he saw Helfinstine get out of his car and walk toward the appellant's car. Blair further testified that as he was turning around he heard a "whop" sound. At this point, Whitechurch walked back to his vehicle with a hammer in his hand and then got back into his car. Blair stated that when the female driver of Whitechurch's car pulled ahead he saw a man laying on the ground. Blair then asked Whitechurch what was happening. Whitechurch responded, "No son of a bitch is going to accuse my sister of a wreck." Blair also related that when Helfinstine got up off the ground, he and Whitechurch exchanged a few choice words and then both parties drove from the scene.

Whitechurch argues that based upon this evidence he was entitled to a jury instruction on "defense of others," in addition to a self defense instruction.

Title 21 O.S.1981, § 733 provides:

Homicide is also justifiable when committed by any person in either of the following cases:

.    .    .    .    .

2. When committed in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress, or servant, when there is a reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished;

It is clear from reading Section 733 that neither brother nor sister are included among the class of persons in defense of whom a life may be taken. We are unwilling to judicially amend this statute by expanding the class of relations that a person may defend. See *Haines v. State,* 275 P.2d 347 (Okl.Cr.1954). To do so would require this Court to legislate and not to interpret a statute which is clear and unambiguous. Any amendment of this statute so as to include other family or social relations must come from the legislature. Therefore, we find that the trial court was not required to give an instruction under Section 733.

■ Although not argued by the appellant, this Court must consider whether the trial court should have given an instruction under this State's crime prevention statutes. Title 22 O.S.1981, §§ 31–33, enumerates those persons who may lawfully resist the commission of a public offense. Section 31 provides that:

Lawful resistance to the commission of a public offense may be made:

1. By the party about to be injured.
2. By other parties.

Further, Section 33 provides that:

Any other person, in aid or defense of the person about to be injured, may make resistance sufficient to prevent the offense.

At common law the right to use reasonable force in preventing a crime was limited to a felony or breach of the peace.[1] In *State v. Sundberg,* 611 P.2d 44, 47 (Alaska 1980), the Supreme Court of Alaska in addressing the issue of crime prevention noted:

The use of force has historically been justified when its purpose is the prevention of a criminal act. Such force is prompted by different motives than when the actor is protecting himself or his property, because the threat is not to a personal interest of the actor but rather to society's general interest in preventing criminal acts. This interest would clearly seem a sufficient justification for force, particularly because the common law justified such force in apprehending the criminal once he had committed the criminal act. Thus the effect of the crime-prevention privilege is to allow a person to use force in preventing a crime, rather than compel him to await the commission of the unlawful act.

Historically, the right to use force in preventing crimes was limited to situations where the threatened act would have constituted a felony or breach of the

1. See W. LaFave & A. Scott, Criminal Law    § 56 (1972).

peace. Consequently, the threatened commission of a nonviolent misdemeanor, such as petty larceny, provided no basis for the use of preventive force.

However, in the 19th century, this common law distinction between the prevention of felonies and misdemeanors began to erode, and it became the general rule that "[O]ne who reasonably believes that a felony, or a misdemeanor amounting to a breach of the peace, is being committed, or is about to be committed, in his presence may use reasonable force to terminate or prevent it." (Footnotes omitted.)

■ Title 22 O.S.1981, § 33, adopts an expansive rule justifying reasonable force by any person in aid or defense of a person about to be injured during the commission of an offense. Section 33 justifying reasonable force to prevent a public offense in which personal injury is imminent, complements, and to a certain extent, overlaps the principles of self-defense and defense of others.[2]

■ Here, there was sufficient evidence from which the jury could have concluded that Whitechurch employed reasonable force in an effort to prevent a felonious assault upon his sister. Therefore, an instruction on the privilege to use reasonable force to prevent the commission of a public offense involving the threat of personal injury should have been given.

Accordingly, the appellant's conviction is REVERSED AND REMANDED FOR A NEW TRIAL.

BRETT, J., concurs.

BUSSEY, P.J., not participating.

---

**2.** For a factual situation analogous to this case see *Mitchell v. State,* 43 Fla. 188, 30 So. 803 (1901).