Dale CRONEY, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–85–509.

Court of Criminal Appeals of Oklahoma.

Dec. 14, 1987.

James E. Gotcher & Associates, McAlester, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Dale Croney, appellant, was tried by jury and convicted of First Degree Arson [21 O.S.1981, § 1401], After Former Conviction of Two or More Felonies [21 O.S.1981, § 51(B) ], in Case No. CRF–84–65, in the District Court of Okmulgee County, the Honorable Edgar R. Boatman, District Judge, presiding. The jury set punishment at forty (40) years imprisonment. Judgment and sentence was imposed in accordance with the jury's verdict. We reverse.

The appellant was charged with setting fire to a dwelling for profit and tried conjointly with the property owners. The State presented expert testimony that the fire resulted from arson. The State further presented evidence that the ashes from the fire contained no furniture debris, indicating removal of the furniture before the fire. The defense presented expert testimony that the fire did not result from arson, and that the ashes did indeed contain melted parts of furniture.

No evidence was presented directly linking the appellant to the fire. Circumstantial evidence was introduced that the appellant possessed certain furniture after the fire similar to that allegedly burned. A witness testified that the appellant told him that the furniture came from a "little job". The witness interpreted the phrase "little job" to mean that the appellant had committed arson for profit.

The appellant, his wife, daughter, brother and sister all testified that the appellant took his family on a vacation to Silver Dollar City in Branson, Missouri, on May 26, 1981; that the sister's car broke down in Mount Vernon, Missouri, on May 27; that the appellant drove his sister back to Tulsa, arriving there at 10:00 p.m. on May 27; and the appellant returned to Branson, Missouri, arriving at 2:00 a.m. on May 28. The house the State alleges the appellant burned is located in a rural area outside of Okmulgee, Oklahoma, some thirty-eight miles south of Tulsa. The fire occurred during either the evening hours of May 27 or the morning hours of May 28, roughly during the period the appellant claimed he was enroute either to Tulsa or back to Branson.

The resolution of this case hinged on the jury's perception of the credibility of the witnesses. The State impeached the appellant's credibility by eliciting from him on cross-examination his previous felony convictions. *See* 12 O.S.1981, §§ 2609(A)(2), 2609(B). One felony conviction for possession of a stolen credit card occurred within ten years of the appellant's trial. The other three convictions introduced in evidence occurred in excess of ten years of the trial: one for second degree burglary in 1970, one for theft of pecans in 1960, and one for escape, which occurred sometime between 1960 and 1963 while the appellant was incarcerated for theft of pecans. It is the introduction of these three stale convictions for impeachment purposes we address.

The State may attack the credibility of a witness with evidence of prior convictions, elicited from the witness or established by public record during cross-examination, "but only if the crime ... [w]as punishable by death or imprisonment in excess of one (1) year, and the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the detriment of the defendant." 12 O.S.1981, § 2609(A)(2).

Title 12 O.S.1981, § 2609(B), however, provides that:

Evidence of a conviction under this section is *not admissible* if a period of more than ten (10) years has elapsed since the date of confinement or of the release of the witness from the confinement imposed for that conviction, whichever is later, *unless the court determines, in the interests of justice, that the probative value of the conviction supported*

*by specific facts and circumstances substantially outweighs its prejudicial effect.* Evidence of a conviction more than ten (10) years old, as calculated herein, is *not admissible unless* the proponent gives to the adverse party *sufficient advance written notice of intent to use such evidence* to provide the adverse party with a fair opportunity to contest the use of such evidence. (emphasis added)

We find three errors in introducing the appellant's previous convictions which were more than ten years old. First, the State failed to give advance written notice to the appellant that his stale convictions would be used for impeachment purposes. Second, the State failed to offer any, much less sufficient, specific facts and circumstances to satisfy their burden of proof that the probative value of the stale convictions substantially outweighed the prejudicial effect. Third, the trial court failed to conduct a balancing test to determine whether the probative value of the stale convictions substantially outweighed the prejudicial effect, and failed to support its admission of the stale convictions by identifying the specific facts and circumstances which determined its decision to admit the prior convictions which fell outside the ten (10) year limitation of Section 2609(B). *Rushing v. State,* 676 P.2d 842, 853 (Okla. Crim.App.1984).[1]

Section 2609(B) is derived from Federal Rule of Evidence 609(b). We review the origin of the federal rule and the interpretation given to it by the federal courts.

As originally submitted by the Supreme Court and adopted by the House Committee on the Judiciary, Rule 609(b) made impeachment by evidence of convictions totally inadmissible if more than ten years had elapsed since the date of conviction or of release from confinement. The Senate Committee disagreed with this approach and suggested there might be 'exceptional circumstances' under which the conviction might bear on the credibility of the witness. The Committee did note, however, that '[i]t is intended that convictions over 10 years old will be *admitted very rarely and only in exceptional circumstances.*' Because of the differences between the House and Senate versions, the Conference Committee adopted a compromise, basically the Senate version with addition of the notice requirement to avoid surprise.

*United States v. Shapiro,* 565 F.2d 479, 481 (7th Cir.1977) (citations omitted) (emphasis added). *See also United States v. Cavender,* 578 F.2d 528, 530 (4th Cir.1978). *See generally* Annot. 43 ALR Fed. 398 (1979). It is "crystaline" that a trial court may depart from the prohibition against the use for impeachment purposes of convictions more than ten years old only "very rarely and only in exceptional circumstances," and there are strict limits within which the trial court may exercise its discretion to permit use of such convictions for impeachment purposes. *Cavender,* at 530.

The State candidly admits giving no advance written notice to appellant that his stale convictions would be used for impeachment purposes. The State argues, however, that the notice requirement was fulfilled because the appellant had the opportunity to contest the use of the evidence before it was admitted. In the instant case, notice came when the State tried to

1. In *Rushing* we found error when the State failed to give the accused adequate advance written notice of intent to use the stale convictions under Section 2609(B). We further found error in failure to provide sufficient "specific facts and circumstances" to justify a determination that the probative value of admitting the stale convictions outweighed the prejudicial effect. *Rushing,* however, found the errors harmless under the *Chapman* test. In the instant case, the facts and circumstances preclude the summary use of the "harmless error test". Additionally, the dissent, *infra,* relies on *Henegar v. State,* 700 P.2d 659 (Okla.Crim.App.1985), and

*Campbell v. State,* 636 P.2d 352 (Okla.Crim.App. 1981), for the proposition that admission of former convictions are within the discretion of the trial court. These two cases concerned admissibility of former convictions under Section 2609(A)(2), not under Section 2609(B). *Henegar* was overruled in *Robinson v. State,* 743 P.2d 1088, 1090 (Okla.Crim.App.1987). Finally, in *Gilbreath v. State,* 651 P.2d 699 (Okla.Crim.App. 1982), and *Harrall v. State,* 674 P.2d 581 (Okla. Crim.App.1984), the defendant himself introduced the stale convictions on direct examination and invited the error. Neither of these two cases are on point.

impeach the appellant during cross-examination. After defense counsel objected, his objection was contested in chambers before the trial court permitted the State to proceed.

Section 2609(B) requires, by the clear wording of the statute, that the State give sufficient advance notice in writing as a predicate for introducing the stale convictions for impeachment purposes. Failure to fulfill the requirement of advance written notice in satisfaction of the statute is fatal. The State's argument flies in the face of the statute. Furthermore, were we to acquiesce in the State's argument, we would permit the very conduct the statute was intended to prevent—impeachment by ambush. We refuse to do so and find it was error for the trial court to admit the stale convictions for impeachment purposes when the State failed to satisfy the notice requirements.

Title 12 O.S.1981, § 2403, permits the exclusion of relevant evidence if the trial court finds its probative value is substantially outweighed by the danger of unfair prejudice. Under Section 2403 the party objecting to the introduction of the evidence has the burden of establishing that the prejudice substantially outweighs the probative value. Section 2403 presumes the relevant evidence will be admitted. *See Robinson v. State*, 743 P.2d 1088, 1090 (Okla.Crim.App.1987). Under Section 2609(B), however, the burden of proof and the balancing test is reversed. The prosecution bears the burden of proof that the probative value of the stale convictions substantially outweighs the prejudicial effect. *See McCormick on Evidence* 94 n. 9 (E. Cleary 3d ed. 1984). To support this burden of proof, the State must rebut the presumption that introduction of stale convictions for impeachment purposes prejudices the accused, and the State has a heavy burden in rebutting that presumption. *United States v. Beahm*, 664 F.2d 414, 418 (4th Cir.1981). The State's burden of rebutting the presumption of prejudice must be supported by "specific facts and circumstances". *Cavender, supra* at 530. Here, the State offered no "specific facts and circumstances" in support of their in-

troduction of the stale convictions for impeachment purposes. The State merely notified the court and the appellant of their intention to introduce the convictions, thereby failing to satisfy their burden of proof.

■ Once the State introduces "specific facts and circumstances" in support of their burden of proof, the trial court is required to perform a balancing test to determine whether the probative value of the stale convictions substantially outweighs the prejudicial effect. The trial court is further required to make a record and support its admission of the stale convictions by identifying the "specific facts and circumstances" which determined its decision.

> It is axiomatic that in the absence of any findings by the [trial court] and any articulation of the 'specific facts and circumstances' supporting its decision, there can be no meaningful appellate review of that decision.... [A]ppellate review in such circumstances would be a 'meaningless gesture,' an empty formality, and a 'game of blindman's bluff.'

*Cavender, supra* at 532. This standard that a trial court support its findings by "specific facts and circumstances" is "stringent" because the purpose of Section 2609(B) is to prohibit the admission of convictions more than ten years old except "very rarely." *Beahm, supra,* at 418.

■ When conducting the balancing test, the trial court must weigh two primary, but not exclusive, factors. First, the pivotal issue of the probative value of a conviction turns largely on the nature of the conviction itself, since the purpose of impeachment is not to show that the accused who takes the stand is a "bad" person but rather to show background facts which bear directly on whether the jurors ought to believe him. The crimes which meet this test of inferring a propensity to lie are those which rest on some element of deceit, untruthfulness, or falsification. *Cavender, supra,* at 534. Therefore, those previous stale convictions, to be admissible, must have some bearing on the accused's propen-

sity to tell the truth. *Beahm, supra,* at 419. Here, the previous convictions for burglary, stealing pecans, and escape have little, if any, probative value on the appellant's propensity for truthfulness.

■ The second primary factor to be weighed in the balancing test is the similarity between the previous conviction and the present charge. Similarity between the prior convictions and the charged offense greatly increases the risk of unfair prejudice. *Shapiro, supra,* at 481. "The jury, despite limiting instructions, can hardly avoid drawing the inference that the past conviction suggests some probability that the defendant committed the similar offense for which he is currently charged." *Beahm, supra,* at 418–19. Here, the prior convictions have no similarity to the present offense, greatly lessening the prejudicial effect of admitting the stale convictions. However, the balancing test focuses on whether the probative value substantially outweighs the prejudicial effect. Since there was no probative value in admitting the previous convictions, because the previous convictions did not go to the appellant's propensity for truthfulness or untruthfulness, the probative value of the convictions could not substantially outweigh the prejudicial effect.

■ Finally, the State argues that if error occurred here, it was harmless error. We do not agree. The jury's determination of guilt hinged on the credibility of the witnesses. The State improperly impeached the credibility of the appellant by introducing the stale convictions to prove the appellant's bad character, not to show his propensity for truthfulness or untruthfulness while on the stand. Under the facts and circumstances of this case, we cannot say the error was harmless beyond a reasonable doubt. *See Cavender, supra,* at 535.

Accordingly, for the foregoing reasons, the judgment and sentence is REVERSED and the case is REMANDED for a new trial.

BRETT, P.J., concurs.

BUSSEY, J., dissents.

BUSSEY, Judge, dissenting.

I must respectfully dissent to the Court's disposition of this case. Despite the fact that this case does not present an issue of first impression, appellant cited no cases supporting the assignment on which the majority has reversed. We have decided numerous cases applying and construing the section of the evidence code here disputed. A review of those cases demonstrates that appellant's conviction should not be reversed. It is well recognized that the trial judge has wide latitude in determining the probative value of a defendant's prior convictions. *Henegar v. State,* 700 P.2d 659 (Okl.Cr.1985); *Campbell v. State,* 636 P.2d 352 (Okl.Cr.1981), *cert. denied* 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983). In this case, the trial judge allowed questioning concerning the disputed convictions only after hearing argument from both sides. I cannot find that the trial judge abused his discretion. Furthermore, examination of a defendant concerning his prior convictions can be harmless, *Rushing v. State,* 676 P.2d 842 (Okl.Cr.1984), or invited *Gilbreath v. State,* 651 P.2d 699 (Okl.Cr.1982). In this case, testimony admitted as statements against appellant's penal interest along with expert testimony of evidence at the scene, telephone records showing appellant's connection with the owners of the insured premises, and appellant's subsequent acquisition of furniture supposedly destroyed in the fire overwhelmingly establishes appellant's guilt. His credibility was destroyed by his testimony which was inconsistent with this evidence, and any error that could have occurred by admission of his prior offenses was harmless. Appellant wholly failed to satisfy his burden to show that he was prejudiced in a substantial right. *Harrall v. State,* 674 P.2d 581 (Okl.Cr.1984).

The absence of authority supporting appellant's assignment is underscored by the majority's opinion, which contains no cases of this Court which could reach the majority's result. Nor has the Court distinguished or overruled our prior cases incon-

sistent with this holding. If the majority's theory is to be adopted, its impact on prior law must be explained in order that judges, prosecutors, and defendants alike can understand the law and apply it properly.

For the foregoing reasons, I dissent.