Kenneth Harold GOURLEY, Appellant,

v.

The STATE of Oklahoma, Appellee.

Nos. F–87–501, F–87–520.

Court of Criminal Appeals of Oklahoma.

July 13, 1989.

Johnie O'Neal, Public Defender, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge.

Kenneth Harold Gourley, appellant, was convicted by jury of Assault with a Deadly Weapon (21 O.S.1981, § 652), and Possession of a Sawed–Off Shotgun (21 O.S.1981, § 1289.18), each After Former Conviction of Two or More Felonies (21 O.S.Supp.1985, § 51(B)), in Tulsa County District Court, Case No. CRF–86–3794, before the Honorable Clifford Hopper, District Judge. Punishment was set at forty (40) years imprisonment on each count, the sentences to run consecutively. Nine days later, appellant was convicted by jury of Felonious Possession of a Sawed–Off Shotgun and Felonious Possession of a Pistol (21 O.S.Supp. 1983, § 1283), in Tulsa County District Court, Case No. CRF–86–3798, before the Honorable Clifford Hopper, District Judge. Punishment was set at ten (10) years imprisonment on each count, the sentences to run consecutively. Appellant's motion to consolidate the cases on appeal has been granted. We affirm in part, reverse in part, and modify in part.

Tulsa police received a tip that methamphetamine was being sold out of Room 24 of the Brookshire Motel. On October 22, 1986, at 1:40 a.m., two undercover narcotics officers, Nick Hondros and Harold Wilson, went to Room 24 and arranged to buy 3½ grams of methamphetamine from Pangy Goodson for $325. Goodson left the room to get the drugs. Upon her return, the door flew open, Goodson stepped into the

room and to the side, and appellant jammed a loaded sawed-off shotgun under Officer Hondros' chin. Hondros knocked the gun away with one hand, grabbed appellant's belt with the other hand, and felt a pistol in appellant's waistband. The men fell out the door and struggled on the ground for control of the weapons. Officer Wilson identified himself as a police officer several times, and when he tried to assist Hondros, appellant pointed the shotgun at him. Appellant pointed the shotgun at Hondros' back several times during the struggle. Backup officers helped subdue appellant and disarm him. The .20 gauge shotgun and the .357 magnum revolver were loaded. Officer Wilson testified there were several scratch marks on the primer area of the shotgun shell found in appellant's shotgun, indicating the firing pin had hit the primer but not with enough force to detonate the shell. Appellant defended on the theory of defense of another on the ground that Goodson had come to his room at another motel and asked him to run off "two junkies [at her room] demanding to buy dope." (Tr. CRF-86-3794 at 113).

### I.

### First Trial (CRF-86-3794)

### A.

■ Appellant first claims the trial court erred by refusing to give his requested written instruction on defense of another. The fatal flaw in appellant's argument is that he testified Pangy Goodson came to his room at another motel for assistance. Therefore, at the time appellant went to her aid, she had already reached a place of safety and could not have been in danger of injury. This case is thus distinguishable from *Whitechurch v. State*, 657 P.2d 654, 657 (Okla.Crim.App.1983). Absent evidence supporting the instruction, this assignment is meritless. *See Hopper v. State*, 736 P.2d 538, 541 (Okla.Crim.App. 1987).

### B.

■ Appellant next contends the State prevented him from calling a witness necessary to establish his defense of defense of another by charging Pangy Goodson with attempted armed robbery two weeks before trial, relying on *Mills v. State*, 733 P.2d 880 (Okla.Crim.App.1986), and *Clark v. State*, 585 P.2d 367 (Okla.Crim.App. 1978). "[I]f a prosecutor threatens a defense witness with future charges by virtue of the witness' testimony, and the witness then refuses to testify, the defendant has been deprived of his right to present witnesses, and reversal of the conviction is required." *Mills*, 733 P.2d at 883. In the case at bar, the State charged Goodson with attempted robbery two weeks before appellant's trial. The record fails to reflect that appellant attempted to subpoena Goodson or that the State improperly instituted the charges against Goodson to prevent her from testifying. Appellant contends Ms. Goodson's testimony was necessary to establish his defense of another. Goodson's testimony would have been cumulative since appellant called Charlotte Wagner, who was present when Goodson allegedly came to appellant for assistance. She testified extensively that Ms. Goodson came to appellant's room, beat on the door, appeared nervous, and said, "Kenny, Kenny, I need Kenny to come over here to my room. There's these two junkies and then she said a nasty word." (Tr. CRF-86-3794 at 156). "She said—let me think—she said I need Kenny to come run them off, run their junkie asses off and she was just cussing, running around. She seemed like she was in a hurry." *Id.* This assignment is meritless.

### C.

For his third assignment of error, appellant urges his sentence is excessive because of prosecutorial misconduct which inflamed the passions of the jury.

### 1.

■ Appellant first argues the prosecutor improperly impeached his credibility by introducing prior convictions over ten years

old without satisfying the statutory requirements of 12 O.S.1981, § 2609(B). Appellant argued *in camera* that the State had failed to provide advance written notice that the stale convictions would be used for impeachment purposes and the prosecutor had failed to meet his burden of articulating specific facts and circumstances establishing that the probative value of the stale convictions substantially outweighed the prejudicial effect. *Croney v. State,* 748 P.2d 34, 37 (Okla.Crim.App.1987). The trial court admitted the stale convictions for impeachment purposes "in the interests of justice" but failed to support its decision by identifying the specific facts and circumstances which determined the decision. *Id.* The prosecutor then revealed to the jury on cross-examination that appellant had two previous convictions for robbery. (Tr. at 140). Although error occurred under the requirements set forth in *Croney,* the question is whether the error requires reversal.

■ In *Croney,* we reversed because the conviction was supported by weak circumstantial evidence, and the jury's determination of guilt hinged on the credibility of the witnesses. *Id.* at 35. Under those circumstances, the State's improper impeachment of Croney's credibility by introducing the stale convictions could not properly be termed harmless beyond a reasonable doubt. We distinguish *Rushing v. State,* 676 P.2d 842, 853 (Okla.Crim.App.1984), which found a breach of Section 2609(B) harmless under the facts of that case. Here, the strong direct evidence of guilt and the minimal prejudicial effect of admitting the stale convictions leads us to conclude the error was harmless beyond a reasonable doubt. *Id.*

### 2.

■ Appellant next contends the prosecutor improperly questioned him concerning the amount of time he served for his previous conviction for burglary in 1985 and for felonious possession of a firearm in 1986. On direct examination, defense counsel asked appellant: "Q. Did you go

to the penitentiary for that? A. Yes, sir. Q. For how long? A. For a two-year sentence." (Tr. at 116). On cross-examination, the prosecutor asked appellant how long he had served for these two convictions. Appellant replied, over objection, "I done about 8 months altogether on both the two year sentences." (Tr. at 132). The State correctly argues that defense counsel may not through direct examination invite error on cross-examination and later complain of such error. *Penn v. State,* 684 P.2d 562, 564 (Okla.Crim.App.1984). However, such an invitation does not give the prosecutor "an unrestricted license" to elicit improper testimony. *Starr v. State,* 602 P.2d 1046, 1049 (Okla.Crim.App.1979). Any inquiry by a prosecutor into the time actually served by a defendant on a prior conviction is highly improper. *Stringfellow v. State,* 744 P.2d 1277, 1279–80 (Okla.Crim.App.1987).

### 3.

■ Finally, appellant argues the prosecutor's characterization of him as a "career criminal" (Tr. at 143), his appeal to the jury to assess punishment as high as 2,000 years (Tr. at 218), and his urging the jury several times to "send a message" to appellant by assessing "the maximum possible sentence you can conceive." (Tr. at 219–220, 241–42), improperly inflamed the jury to render an excessive sentence. Considering the foregoing improper comments together with the errors in Part I(C)(1) & (2), we agree the improper comments warrant modification. *See Starr,* 602 P.2d at 1049. Therefore, appellant's sentences are modified to thirty (30) years imprisonment on each count, to run consecutively.

### D.

■ Appellant lastly complains the trial court erred by not issuing verdict forms outlining the punishment for each offense without enhancement by prior conviction. Appellant admitted his two former felony convictions on direct examination, and the

State introduced the judgments and sentences into evidence. While this writer has expressed the view that whether an accused is guilty of prior felony convictions is always within the province of the jury, *Hanson v. State*, 716 P.2d 688, 690 (Okla. Crim.App.1986) (Parks, P.J., Specially Concurring), a majority of this Court has held that where an accused admits his former felony convictions on the stand, there is no factual question for the jury's determination. *Id.* Although I disagree with this rule, I am compelled to honor it as a matter of *stare decisis*.

## II.

### Second Trial (CRF-86-3798)

Appellant raises two assignments concerning his second trial: first, the State was barred by double jeopardy and collateral estoppel from retrying him for felonious possession of firearms, and second, the State failed to provide him a preliminary hearing. Appellant raised the double jeopardy and collateral estoppel issues at trial. (O.R. 19) (Tr. 4–7)

### A.

■■■■■ The constitutional prohibition against double jeopardy "extends to subsequent prosecutions for the same offense after conviction or acquittal and to multiple punishments for the same offense." *Wimberly v. State*, 698 P.2d 27, 31 (Okla.Crim. App.1985). In appellant's first trial, the jury convicted him of Possession of a Sawed–Off Shotgun (21 O.S. 1981, § 1289.18), After Former Conviction of Two or More Felonies (21 O.S.Supp.1985, § 51(B)), in a single stage trial. In his second trial, based on identical facts, the jury convicted him of Felonious Possession of a Sawed–Off Shotgun (21 O.S. 1981, § 1283). Normally, under Section 51(B) a prior felony conviction is not an element of an offense but is used for sentence enhancement, while a former felony conviction is an element of an offense under Section 1283. *Fenter v. State*, 695 P.2d 12,

13 (Okla.Crim.App.1985). Under the unique facts of this case, however, we believe the former felony convictions which were introduced at the first stage of each trial merged under Sections 1289.18 and 51(B). Thus, whether we apply the so-called "same evidence" or "same transaction" test, we find that the two convictions constituted the "same offense" for purposes of double jeopardy. *See Hunnicutt v. State*, 755 P.2d 105, 109–111 (Okla.Crim. App.1988). Therefore, appellant's second conviction for Felonious Possession of a Sawed–Off Shotgun must be reversed.

### B.

■■■■■ In his second trial, appellant was convicted of Felonious Possession of a Pistol (21 O.S.Supp.1983, § 1283). In his first trial, he had been convicted of Possession of a Sawed–Off Shotgun (21 O.S. 1981, § 1289.18), After Former Conviction of Two or More Felonies (21 O.S.Supp.1985, § 51). In Part II(A), we recognized as a practical matter that appellant's two convictions relating to the sawed-off shotgun, one under Section 1289.18 enhanced with Section 51 and the other under Section 1283, had merged into the "same offense" under the unique facts of this case. Accordingly, appellant has been convicted of an additional count under Section 1283 based on identical facts except that one conviction concerns a sawed-off shotgun and the other concerns a pistol. Appellant carried both weapons at the same time, and there was no separation between the two offenses in terms of time or location. Under these circumstances, we believe the rationale expressed in *Hunnicutt*, 755 P.2d at 111, "that a prosecutor cannot stack multiple charges in situations such as this" is controlling. It would be absurd to hold that the State could charge appellant with as many counts under Section 1283 as the number of weapons he carried. *Id.* at 110. Based on the foregoing, we hold it was improper for the State to convict appellant for an additional count of felonious possession of a firearm. Further, contrary to the

ruling by the trial court, there is nothing in the record to support the trial judge's statement that defense counsel objected to the State's joinder motion. Therefore, in any event, we agree with appellant that the State was collaterally estopped from prosecuting him for felonious possession of a pistol because the State had introduced this evidence at his first trial as part of the res gestae of the offense. *See Chaney v. State*, 612 P.2d 269, 282 (Okla.Crim.App. 1980). Therefore, the conviction for Felonious Possession of a Pistol must be reversed.

### C.

In light of our disposition of appellant's first assignment of error, it is unnecessary to address his claim that the State failed to afford him a preliminary hearing for CRF–86–3798.

The judgments and sentences in CRF–86–3794 are AFFIRMED as MODIFIED to imprisonment for thirty (30) years imprisonment, to run consecutively. The judgments and sentences in CRF–86–3798 are REVERSED and REMANDED with instructions to DISMISS.

LANE, V.P.J., and BRETT and BUSSEY, JJ., concur.

LUMPKIN, J., concurs in part/dissents in part.

LUMPKIN, Judge: concurring in part/dissenting in part.

I concur with the Court's determination that the charges of Felonious Possession of a Sawed–Off Shotgun and Felonious Possession of a Pistol in CRF–86–3798 must be reversed and remanded with instructions to dismiss for the reasons set forth by Judge Parks. I further concur that the convictions of Assault with a Deadly Weapon and Possession of a Sawed–Off Shotgun in CRF–86–3794 should be affirmed. However, I must dissent to the Court's determination that the sentences in CRF–86–3794 should be modified to thirty (30) years on each count.

The evidence reveals the question by the prosecutor to the Appellant regarding how long he had served for the convictions of burglary and felonious possession of a firearm was in direct response to the questions proposed by the defense attorney on direct examination. The question was proper cross-examination to clarify a false impression which was conveyed by the Appellant's response on direct examination. This inquiry is distinguishable from that in *Stringfellow v. State*, 744 P.2d 1277 (Okl. Cr.1987) wherein the prosecutor, in closing argument, attempted to lead the jury through a computation of the time actually served by the defendant based on the testimony at trial. *Stringfellow* cites to *Dyke v. State*, 716 P.2d 693, 699 (Okl.Cr.1986), as additional authority for the proposition that evidence admitted regarding the amount of time actually served on a prior conviction, if raised by the prosecutor, would constitute error. However, Judge Parks, writing for a unanimous court in *Dyke*, held "However, in this case, the evidence regarding time served on the prior conviction was raised by the Appellant on direct examination, not by the prosecutor. This assignment of error is therefore wholly without merit." *Id.* at 699.

In addition, the minimum sentence in each of these cases after two or more former convictions was twenty (20) years. The jury was not swayed by the prosecution's appeal for a punishment as high as two thousand (2,000) years but set punishment at forty (40) years on each count. The sentence is reasonable under the evidence in the case and does not reveal the jury was influenced to render an excessive sentence by the comments of the prosecution. I would therefore affirm the sentence of forty (40) years on each count as recommended by the jury and imposed by the trial judge.