THREE "M" INVESTMENTS, INC.,
a corporation, Appellee,

v.

The AHREND COMPANY, a corporation; and Norman Ahrend, an individual, Appellants.

No. 72077.

Supreme Court of Oklahoma.

March 10, 1992.

As Corrected March 11 and 17, 1992.

Richard A. Shallcross, Brewster, Shallcross and Rizley, Tulsa, for appellee.

C.A. Whitebook, Hickman & Hickman, Tulsa, for appellants.

SIMMS, Justice:

Norman Ahrend and The Ahrend Company (TAC), a corporation operated by Ahrend, defendants below, appeal judgment rendered against them and in favor of Three "M" Investments, Inc. (Three "M") on the grounds that the trial court erred when it disallowed evidence of a witness's conviction, prohibited leading questions, refused to give requested jury instructions, and used certain instructions.

The Court of Appeals affirmed finding no error by the trial court in its evidentiary decisions. However, the Court of Appeals refused to address appellants' jury instruction propositions. Certiorari was granted, and we find the trial court did not err. The opinion of the Court of Appeals is vacated, and the judgment of the district court is affirmed. The material facts are undisputed.

Three "M" entered into a contract with TAC to sell twelve residential lots of property for $186,600.00 to the latter. C.J. French, an officer of Three "M", negotiated the terms of the contract for Three "M" and Ahrend negotiated for TAC. TAC agreed to pay the purchase price by giving a certain sum of money on the resale of the lots, by assigning a note, and by conveying other property to Three "M".

Three "M" conveyed the lots as agreed, but TAC failed to fulfill its obligations under the contract. Three "M" filed an action against Ahrend and TAC for fraud, and later amended it to include causes of action for breach of contract and malicious breach of contract. After trial, the jury returned a verdict in favor of Three "M",

awarding $226,912.50 in actual damages and $75,000.00 in punitive damages. The trial court entered judgment accordingly.

■ Ahrend and TAC first assert error in the trial court's refusal to allow them to impeach French's testimony in the trial by introducing evidence of French's previous criminal conviction. They assert the evidence is admissible under 12 O.S.1981, § 2609(A) as the conviction was one for income tax evasion, clearly an offense involving "dishonesty or false statement." The trial court disallowed the evidence under § 2609(B) because the conviction was over ten years old. Section 2609(B) reads, in pertinent part:

"Evidence of a conviction under this section is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is later, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect...."

The witness was released from prison on July 19, 1978, and Ahrend and TAC argue that the ten year period is to be measured to the *date on which the lawsuit is filed,* in this case, August 15, 1986. Under their theory, the ten year period had not run. They cite no authority to support their view.

Conversely, Three "M" argues that the date from which the period should be measured is the date of the witness's testimony at trial. French testified in early October of 1988, over ten years after being released from prison. This Court has not had occasion to determine whether the ten-year period runs to the trial date or the date upon which the lawsuit was filed. However, the Oklahoma Court of Criminal Appeals has construed § 2609(B). Moreover, § 2609(B) was adopted from Federal Rule of Evidence 609(b) and is almost identical to it, so federal cases construing the federal rule are instructive.

Section 2609 allows evidence of prior convictions for one purpose, to attack the credibility of the witness. *Croney v. State,* 748 P.2d 34, 35 (Okla.Crim.App.1987); 1 *Okla. Evid.* (Whinery) § 2609, p. 208; *United States v. Cathey,* 591 F.2d 268, 275 (5th Cir.1979) (construing Fed.R.Evid. 609(b)). The time at which a witness's credibility would need to be questioned is when that witness is testifying, not when the lawsuit is filed. Professor Weinstein addressed this issue and concluded:

"Some uncertainty has been expressed as to whether the applicable period should be measured up to the date when the trial commences, or the witness testifies, or the date of the charged crime. The time of testimony is most appropriate since the jury must determine credibility at that moment." J. Weinstein & M. Berger, 3 *Weinstein's Evidence* ¶ 609[07], at 609–74 (1991).

In *Cathey,* supra, the court determined that the trial court abused its discretion under Fed.R. of Evid. 609(b) when it allowed a sixteen year old conviction into evidence to impeach the defendant in a criminal trial. The appellate court held that sixteen years had passed from the witness's release from prison to the date the witness was "called to testify." 591 F.2d at 274.

In analyzing the situation, the court noted in a caveat that:

"... since the concern is the defendant's credibility when he testifies the correct point from which to measure backwards in time may be the date when he testifies rather than the date when the trial commences, which in a protracted trial might be considerably earlier."

591 F.2d at 274 n. 13. Thus, under *Cathey,* the earliest date for the time period to end is the commencement of trial with the date of testimony possibly more appropriate when the trial is protracted.

In ruling that a conviction less than ten years old was admissible, the Third Circuit stated:

"Normally such evidence is admissible only if either the conviction or the witness' release from prison occurred *within 10 years of the trial.*"

*United States v. Hans,* 738 F.2d 88 (3rd Cir.1984) (Emphasis added). See also, *United States v. Thompson,* 806 F.2d 1332, 1339 (7th Cir.1986) (evidence of a prior conviction was admissible in a trial which commenced within ten years of the defendant/witness's release from confinement); *United States v. Holmes,* 822 F.2d 802 (8th Cir.1987) (trial court did not abuse discretion under Fed.R.Evid. 609(b) in admitting impeachment evidence of four convictions where each of the convictions were over twelve years old "at the time of the trial").

■ Thus, the only authority we have found which has considered the time period issue concluded that the ten-year period does not elapse any earlier than the date the trial commences. This conclusion is supported by the intent of § 2609, namely, to allow evidence of a witness's prior convictions before the jury so that the jury can assess the credibility of the witness at the time they are testifying. Hence, French's conviction was over ten years old at the time relevant herein,[1] and was not admissible under § 2609(B) unless the probative value of the conviction "supported by specific facts and circumstances" substantially outweighed the prejudicial effect.

Since the case essentially came down to a "swearing match" between French and Ahrend as to what each told the other, French's conviction for income tax evasion had some probative value. *Mills v. Estelle, infra,* 552 F.2d 119 (5th Cir.1977). Indeed, the Eighth Circuit Court of Appeals has held that

"where the credibility of one witness must be weighed directly against that of another, the probative value of a prior conviction may well be enhanced, rather than diminished."

*United States v. Spero,* 625 F.2d 779, 781 (8th Cir.1980); *Holmes,* 822 F.2d at 805. However, the majority of courts align with the Sixth Circuit court which stated in *United States v. Sims, infra,* 588 F.2d 1145 (6th Cir.1978):

"When stale convictions are offered for the purpose of impeaching a witness, they often shed little light on the present tendency of the witness towards truthfulness and veracity." 588 F.2d at 1148.

This is especially true in light of both counsel affirming to the trial court that French normally was forthright in revealing his previous conviction to those with whom he was negotiating, and had done so with Ahrend during their negotiations.

■ Despite the probative value this evidence has, Ahrend and TAC had the legal burden to show that the probative value was substantially greater than the prejudicial effect. They concede that a presumption in favor of excluding the evidence must be recognized. *Croney,* supra; *Cathey,* supra; *United States v. Sims,* 588 F.2d 1145, 1147 (6th Cir.1978); *Mills v. Estelle,* 552 F.2d 119, 120 (5th Cir.), *cert. denied,* 434 U.S. 871, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977). This presumption is necessary because Congress and the U.S. Supreme Court consider stale convictions to have "little, if any, probative value for determining the credibility of a witness." *Sims,* 588 F.2d at 1148.

In meeting their legal burden, Ahrend and TAC were required to introduce "specific facts and circumstances" which showed the probative value *substantially outweighed* the prejudicial effect to Three "M". 12 O.S.1981, § 2609(B); *Croney,* 748 P.2d at 37. They presented nothing to the court other than the fact that the conviction was one involving "dishonesty and false statements." Indeed, after weighing the prejudicial effect and probative value,

---

1. We do not here determine whether the ten year period ends on the day the trial begins or on the day the witness testifies. It is enough to find in this case that ten years had elapsed under either view. The determination of the exact date to which the period runs must wait until an appropriate case is before this Court.

the trial court specifically stated that the conviction was "tremendously prejudicial" and refused to allow the evidence. We find no abuse of discretion in this determination.

Next, Ahrend and TAC contend the trial court committed error in prohibiting counsel from using leading questions to examine Ahrend on the witness stand. Three "M" called Ahrend as a witness in its case-in-chief, and the trial court allowed counsel for Three "M" to "lead" Ahrend since he was a "hostile witness." When Ahrend's counsel attempted to use leading questions in his cross-examination of Ahrend, the trial court would not allow it.

Ahrend and TAC assert they are permitted to cross-examine any witness that Three "M" calls, and that cross-examination, by its very nature, entails leading questions. They cite numerous authorities concerning the right to cross-examination, yet they appear to confuse this right with the right to utilize leading questions.

The applicable statute, 12 O.S.1981, § 2611, provides, in pertinent part, as follows:

"B. *Any party to a civil action or proceeding may compel any adverse party or person, or any agent*, servant or employee of such party or person, for whose benefit such action or proceeding is instituted, prosecuted or defended, *to testify as a witness, at the trial*, or by deposition, *in the same manner and subject to the same rules as other witnesses, provided that any such adverse party, his agent*, servant or employee *called as a witness by the opposing party shall be deemed a hostile witness and may be cross-examined by the party calling him to the same extent as any opposition witness.*

\* \* \* \* \* \*

D. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Leading questions should *ordinarily* be permitted on cross-examination. *When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, leading questions may be used on direct examination.*" (Emphasis added)

In the Evidence Subcommittee's Note regarding § 2611, the following is stated:

"Section 611(B) is taken verbatim from Okla.Stat. 12 § 383 and was included to retain the statutory law enabling a party to call the adverse party during the presentation of his case in chief. *The adverse party thus called and examined may thereafter be examined by his attorney, but he may not employ leading questions in the interrogation.* The witness would, of course, be subject to impeachment pursuant to Rules [2]607, [2]608, and [2]609." (Emphasis added)

The intent of the statute is that litigants are entitled to call the opposing party as a witness in the former's case in chief. Inherently, that witness will be adverse to the case the litigant is trying to prove. Thus, the litigant is entitled to use leading questions to elicit the testimony from the witness.

However, contrary to the characterization of § 2611 given by Ahrend and TAC, the statute's intent is not to allow counsel for one litigant to use leading questions to steer that litigant in the direction counsel wants them to go. The Evidence Subcommittee's Notes clearly indicate that § 2611 was not intended to allow such a result.

Ahrend and TAC cite to other jurisdictions and to 98 Am.Jur.2d, *Witnesses,* § 510 (1976), claiming these authorities recognize that counsel can lead his client on cross-examination when that client is called as a witness by the opposing party. However, § 510 notes that the majority of cases do not allow leading questions in such cases. Of those jurisdictions that did allow leading questions, only one case, *Wilcox v. Erwin,* 49 S.W.2d 677 (Mo.Ct.App.1932), appears to embrace the argument that Ahrend and TAC assert.

Nevertheless, the intent of § 2611 is clear, and we find the trial court correctly refused to allow counsel to use leading questions, other than for impeachment purposes, during cross-examination of Ahrend when he was called as an adverse witness for Three "M." This assignment of error is without merit.

Appellants' final proposition of error concerns the jury instructions given by the court and requested jury instructions refused by the court. Appellants did not set out the instructions *in totidem verbis* in their brief as required by Rule 15 of the Rules of the Supreme Court of Oklahoma, 12 O.S.1981 Ch. 15, App. 1. For this reason alone, the Court of Appeals refused to consider this proposition of error. However, in *James v. State Farm Mut. Auto. Ins. Co.*, 810 P.2d 365 (Okla.1991), we recognized that in some cases, it would be difficult for counsel to set forth the instructions *verbatim* and also make legal arguments concerning the same within the thirty pages allotted by the rule. Therefore, we amended Rule 15 to allow parties to set forth the instructions *in totidem verbis* in an appendix attached to their brief. Appellants have furnished verbatim copies of the jury instructions in their Petition for Rehearing, and we will consider their assignments of error concerning these instructions as if properly attached in an appendix per *James*.

Ahrend and TAC first claim that the trial court failed to give any instruction to the jury which presented their theory of the case, namely that Three "M" repudiated the contract when French told Ahrend that he wanted to change the contract because it was unfair. They argue that after this "anticipatory repudiation," they were no longer obligated to fulfill the terms of the contract, citing numerous cases which hold that it is the trial court's duty to submit jury instructions on the theory of the defense when supported by evidence. For example see, *Justice v. Harrison*, 569 P.2d 439 (Okla.1977).

■ However, the evidence conclusively showed that at the time of the incident, Three "M" had fulfilled all of its obligations under the contract. Thus, Ahrend and TAC could not rely on the defense of anticipatory repudiation as Three "M" had not breached the contract at the time nor able to breach it in the future. Where a party's theory is unsupported by the evidence presented at trial, an instruction should not be given. *Nail v. Oklahoma Children's Memorial Hosp.*, 710 P.2d 755, 759 (Okla.1985). There being no competent evidence to support appellant's anticipatory repudiation theory, we hold that Defendants' Requested Instructions 2, 7, and 8 were properly refused.

■ Requested Instruction No. 1 related to punitive damages in contract cases which was sufficiently covered in given Instruction No. 24. Likewise, Requested Instruction Nos. 3, 4, and 6 concerning negotiations between experienced persons prior to entering a contract for the sale of real estate were sufficiently contained in the court's Instruction No. 21. No error occurs when a court refuses to give requested instructions where the matters therein are covered by the instructions given. *Dippel v. Hargrave*, 206 Okla. 26, 240 P.2d 1070 (1952); *Miller v. Bailey*, 365 P.2d 1000 (Okla.1961); *Linn v. Barnett's Inc.*, 503 P.2d 1276 (Okla.1972).

Requested Instruction No. 5 set forth portions of the statutes of Oklahoma governing the interpretation of the intent of parties negotiating and entering into a contract. See generally, 15 O.S.1981, §§ 154–177. However, the statement of law in the requested instruction was incomplete and likely would have misled the jury when it considered the different causes of action in contract and in fraud. This is especially true in light of the fact that Three "M" plead and presented evidence that the fraud occurred in the negotiations prior to execution of the contract and the breach occurred independent of the allegedly fraudulent promises made during the negotiations.

Therefore, having reviewed each of the eight requested instructions, we find the

trial court made no reversible error in refusing to submit them to the jury.

█ Ahrend and TAC further contend the trial court failed to give any instructions which allowed the jury to return a verdict for the defendants. Other than the general duty of a trial court to instruct upon the issues of the case, they cite no law which requires the trial court to instruct the jury under what circumstances to find for the defendants in the case. Furthermore, the instructions contain verdict forms which allow the jury to find the issues in favor of Ahrend, TAC, or both.

"We have held that a judgment is not to be disturbed on appeal because of allegedly erroneous instructions unless it clearly appears that the instructions given or refusal either caused a miscarriage of justice or led to a different verdict than would have been rendered but for this alleged error." *Nail*, supra.

We have reviewed all of the instructions given to the jury and find that, as a whole, the jury instructions fairly present the law applicable to the issues raised by the pleadings and evidence. Neither the instructions given nor the refusal of the requested instructions caused a miscarriage of justice or led to an erroneous verdict. Therefore, we find no error in the propositions regarding jury instructions.

Having found no reversible error by the trial court, the opinion of the Court of Appeals is VACATED and the judgment of the district court is AFFIRMED.

HODGES, V.C.J., and LAVENDER, DOOLIN, HARGRAVE and SUMMERS, JJ., concur.

ALMA WILSON and KAUGER, JJ., concur in result.

OPALA, C.J., concurs in part, dissents in part.

OPALA, Chief Justice, concurring in part and dissenting in part.

The court affirms judgment on jury verdict for the plaintiff [plaintiff or Three M] in an action to recover for fraud and breach of contract. I concur in today's pronouncement *only* insofar as it concludes the trial court committed no error in (a) refusing to allow the use of a 10–year–old conviction to impeach a witness, (b) refusing to give requested jury instructions and (c) giving certain jury instructions. *I must recede from that part of the court's opinion which holds that after the plaintiff had called Ahrend [defendant] to the stand as an adverse witness, his own counsel could not—without offending § 2611 [1] of the Oklahoma Evidence Code [2]—elicit by leading questions any of his client's cross-*

---

**1.** The terms of 12 O.S.1991 § 2611 are:

"A.  Subject to subsection B of Section 611 of this Code, *the court shall exercise control over the manner and order of interrogating witnesses and presenting evidence* so as to:

1.  Make the interrogation and presentation effective for the ascertainment of the truth;

2.  Avoid needless consumption of time; and

3.  Protect witnesses from harassment or undue embarrassment.

B.  *Any party* to a civil action or proceeding *may compel any adverse party* or person, or any agent, servant or employee of such party or person, for whose benefit such action or proceeding is instituted, prosecuted or defended, *to testify as a witness*, at the trial, or by deposition, in the same manner and subject to the same rules as other witnesses, *provided that any such adverse party*, his agent, servant or employee called as a witness by the oppos-

ing party *shall be deemed a hostile witness* and *may be cross-examined by the party calling him to the same extent as any opposition witness.*

C.  Cross-examination shall be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may permit inquiry into additional matters as if on direct examination.

D.  Leading questions should not be used on the direct examination of a witness *except as may be necessary to develop his testimony. Leading questions should ordinarily be permitted on cross-examination.* When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, leading questions may be used on direct examination." (Emphasis added.)

**2.**  12 O.S.1991 §§ 2101 et seq.

*examination testimony except that sought for impeachment.* For today's restrictive holding the court relies on a comment upon § 2611(B)[3] appended as *subcommittee note* to § 2611,[4] which states that "[t]he adverse party thus called and examined may thereafter be examined by his lawyer, *but he may not [except for impeachment] employ leading questions in the interrogation.*"[5]

I would *not* elevate this comment to a rule so rigid as to interdict *all* leading questions, except *only* those for impeachment, on cross-examination by counsel for a party who had been called by his opponent as an adverse witness. In my view, today's inflexible construction of § 2611 lacks support either in the statute, in its legislative history, in the Rule 611[6] federal jurisprudence, or even in the very comment invoked as the source of the court's holding. Today's pronouncement is also clearly inconsistent with § 2607,[7] which abrogates the common-law "voucher rule". That rule of yore made a party "vouch" for the veracity of his own witness.[8] Today's *sweeping ban* on leading questions—when a party stands for cross-examination after being called as an unfriendly witness for his opponent—makes "vouchable" *all* cross-examination testimony *of every* such witness except only that which is sought for impeachment. The ban on the use of leading questions is likely to become an impediment to a party's ability to elicit critical evidence in support of his own cause or defense. The rule crafted by the court—a plain barrier to forensic ascertainment of truth—lies on a collision course with basic tenets of due process.[9] I would hence preserve the Code's flexibility and hold that a party called as an adverse witness by his opponent may be cross-examined by leading questions from his own counsel not just for impeachment but whenever the trial court in the exercise of sound discretion should so permit. My view would put Oklahoma on a parallel track with the Rule 611 federal jurisprudence.[10]

---

3. For the text of § 2611(B), *see* note 1 *supra.*

4. The Evidence Subcommittee Note to 12 O.S. 1991 § 2611(B) states:
   "Section 611(B) is taken verbatim from Okla. Stat. 12 § 383 and was included to retain the statutory law enabling a party to call the adverse party during the presentation of his case in chief. The adverse party thus called and examined *may thereafter be examined by his attorney, but he may not employ leading questions in the interrogation. The witness would, of course, be subject to impeachment pursuant to Sections 607, 608 and 609."* (Emphasis mine.)

5. Evidence Subcommittee Note, *supra* note 4, (emphasis added).

6. Rule 611, Rules of Evidence For United States Courts and Magistrates, as amended March 2, 1987, eff. Oct. 1, 1987, provides:
   "(a) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
   (b) Scope of cross-examination. Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.
   (c) Leading questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions."

7. The terms of 12 O.S.1991 § 2607 provide:
   "The credibility of a witness may be attacked by any party, including the party calling him."

8. *See* the Court's discussion of the rule in *Chambers v. Mississippi,* 410 U.S. 284, 295–297, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973); *see also* Part II, *infra,* for *my analysis* of the "voucher" rule and its abrogation.

9. *See* explanatory comment in note 32 *infra.*

10. The § 611 federal jurisprudence allows the trial judge *wide latitude in controlling cross-*examination of a party who was called as a witness by his opponent. *See* authorities cited in note 24 *infra.*

I

TODAY'S ADOPTION OF A SWEEPING RULE, WHICH PRECLUDES THE USE OF LEADING QUESTIONS ON CROSS–EXAMINATION BY COUNSEL FOR A PARTY CALLED BY HIS OPPONENT AS AN ADVERSE WITNESS, IS WITHOUT SUPPORT IN THE CODE, IN THE RULE 611 FEDERAL JURISPRUDENCE OR IN THE SUBCOMMITTEE NOTE TO OUR § 2611

A.

Section 2102 [11] brings flexibility as the underlying principle for the Code's application and interpretation.[12] Flexibility dictates that wide discretion be afforded.[13] Inasmuch as the Code makes no explicit foundational requirements for admissibility, the evidentiary rules intend to invest the trial court with broad latitude. When the standard of admissibility itself accords the trial court nearly unlimited discretion, appellate review of discretionary nisi prius rulings should be tightly confined to cases of plain abuse. Discretion is the essence of the trial court's § 2611 [14] control over the evidentiary process, including the manner and order in which witnesses are interrogated.[15]

I would not today allow rigidity to replace a statutory regime so plainly designed to serve as a mechanism for flexibility.

B.

Section 2611(B),[16] which retains its pre-Code text,[17] permits one to call the adverse party as a witness during the presentation of the party's case in chief. While subsection B was designed to permit direct examination of one's opponent, it was not intended to authorize the opponent's own counsel to then cross-examine by putting words into the witness' mouth through leading questions designed to *bolster his own case.* This understanding of § 2611(B) is plainly consistent with interrogation rules that govern on direct examination when a party presents in regular order his evidence in support of a claim or defense. Leading questions may not be used "on the direct examination of a witness except as may be necessary to develop his testimony." [18] *Subsection B cannot be read separately from subsection D.*[19] The latter provides in part that "[l]eading questions should *ordinarily* be permitted on cross-examination." [20] Federal evidence law, after which our Code is patterned, makes the use of leading questions on cross-examination a

---

**11.** The terms of 12 O.S.1991 § 2102 provide: "This Code shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay and promotion of growth and development of the law of evidence to the end that the *truth may be ascertained and proceedings justly determined.*" (Emphasis added.)

**12.** 1 L. WHINERY, OKLAHOMA EVIDENCE: GUIDE TO THE OKLAHOMA EVIDENCE CODE 9 (1985).

**13.** The flexibility implicit in § 2102, *supra* note 11, "is essential to the interpretative process if trial judges are to continue to exercise the discretion they need to adapt the rules to the varying factual contexts in which evidentiary issues arise. This essential flexibility cannot be maintained by using doctrinal approaches to the interpretation of the Code that are unduly restrictive." Whinery, *The Oklahoma Evidence Code: Ten Years of Judicial Review,* 43 Okl.L.Rev. 193, 212 (1990).

**14.** *See* the text of 12 O.S.1991 § 2611(A), *supra* note 1.

**15.** Whinery, *supra* note 13 at 229.

**16.** For the text of 12 O.S.1991 § 2611(B), *see* note 1 *supra.*

**17.** That text was formerly embodied in 12 O.S. 1971 § 383, repealed by Okl.Sess.L.1978, Ch. 285, § 1102, eff. Oct. 1, 1978.

**18.** See the text of 12 O.S.1991 § 2611(D), note 1 *supra.*

**19.** For the text of 12 O.S.1991 § 2611(D), *see* note 1 *supra.*

**20.** 12 O.S.1991 § 2611(D)(emphasis added). For the text of § 2611(D) *see* note 1 *supra.*

matter of right, subject to the qualifying language "ordinarily." [21] The qualification affords "a basis for denying the use of leading questions when the cross-examination is cross-examination *in form only and not in fact,* as for example the 'cross-examination' of a party by his own counsel after being called by the opponent." [22]

In my view, the § 2611 subcommittee note [23] does *not* go beyond this general prohibition; *it does not suggest the trial court is without discretion to allow the use of leading questions when the purpose of interrogation is either to impeach or otherwise to discredit the direct testimony of a party called as an adverse witness for his opponent.* [24] A party may become hostile to his own case through direct examination by the opponent's counsel. *If a witness has been thoroughly discredited by the opposing party who called him, leading questions afford the only effective way to rehabilitate him.* A discredited witness' own lawyer should be permitted to rehabilitate the affected direct testimony by the use of leading questions.

To allow less would impede the law's goal to ascertain the truth. [25]

To implement the Code's goal of flexibility, I would today adopt for Oklahoma a construction identical to that placed on Rule 611 by extant federal jurisprudence. [26] Once proper foundation has been laid for permitting leading questions, the trial court should be free to exercise its discretion—not only when cross-examination is for impeachment—but also when it is for rehabilitation of a party's direct testimony elicited by its adversary. [27]

## II

TODAY'S SWEEPING RULE AGAINST LEADING QUESTIONS IS BOTH INCONSISTENT WITH THE EVIDENCE CODE'S ABROGATION OF THE VOUCHER RULE AND OFFENSIVE TO DUE PROCESS

Section 2607 [28] of our Code, much like Rule 607 [29] of the Federal Rules of Evidence, abolishes the common-law "voucher rule". By force of that rule which is of

**21.** For the text of Rule 611(c), *see* note 6 *supra.*

**22.** Advisory Committee Notes to Federal Rule 611(c). For the text of Rule 611(c), *see* note 6 *supra.* "The right of a cross-examiner to employ leading questions is not absolute under Rule 611(c). If the witness is friendly to the examiner, there is the same danger of suggestiveness as on direct; and consequently the court may, in its discretion, forbid the use of leading questions. 3 Weinstein's Evidence, ¶ 611[05] at 611–59 (1976)." *Morvant v. Const. Aggregates Corp.,* 570 F.2d 626, 635 n. 12 (6th Cir.1978).

**23.** For the text of the subcommittee note, *see supra* note 4.

**24.** In *Morvant v. Const. Aggregates Corp., supra* note 22, the court explicitly rejected the notion that an employer cross-examining his own employees need use nonleading questions. There the court stated: "While Federal Rule of Evidence Rule 611(c) permits the use of leading questions when a party calls a witness identified with an adverse party, *there is no complementary provision requiring such a witness to be cross-examined without the use of leading questions by the party to whom that witness is friendly.* This matter is *within the court's traditional discretion to control the mode of interrogation,"* *id.* at 635

(emphasis added). More recently in *Downriver Internists v. Harris Corp.,* 929 F.2d 1147 (6th Cir.1991), the court, citing *Morvant,* stated that *"[t]here is no rule of evidence or case preventing cross-examination by leading questions, even when the witness and questioning party are friendly,"* *id.* at 1151 (emphasis added). *See also Ardoin v. J. Ray McDermott & Co., Inc.,* 684 F.2d 335, 336 (5th Cir.1982).

**25.** *See* the text of 12 O.S.1991 § 2611(A)(1), note 1 *supra.*

**26.** *See* authorities cited in note 24 *supra.*

**27.** The subcommittee comment, *supra* note 4, correctly recognizes that impeachment of a witness' credibility is an important part of the trial's quest for truth. *It overlooks* the practical reality that "rehabilitating" direct testimony no less than impeaching it calls for examination by leading questions.

**28.** *See* the text of 12 O.S.1991 § 2607, *supra* note 7.

**29.** 12 O.S.1991 § 2607 is identical to Federal Rule 607.

obscure medieval origin [30] a *party calling and examining a witness unequivocally vouched for his credibility.* Even before the Federal Rules of Evidence were adopted, the voucher rule came under severe criticism in *Chambers v. Mississippi.*[31] There the Court concluded the voucher rule had to give way to the demands of due process whenever it posed an artificial and unreasoned barrier to the forensic process of truth-finding. Every civil litigant's right to be heard and to offer testimony unhampered by such unreasoned restrictions is protected by due process.[32] Our own pre-Code jurisprudence abounds in eloquent examples of impermissible barriers to admis-

sibility of evidence, which, when encountered and challenged, came under the court's axe.[33]

Today's pronouncement fashions a *special rule* for cross-examination of the adverse party. Nothing but a subconscious clinging to the remnants of the voucher rule could incline the court to today's holding that cross-examination testimony of a witness "adverse" to the party who called him should be elicited by norms remarkably different from those which apply to any other cross-examination. The court's *special* approach to the issue at hand, which lacks support in federal jurisprudence, transparently rests on the now *unac-*

---

**30.** *See Chambers v. Mississippi, supra* note 8, 410 U.S. at 296, 93 S.Ct. at 1046; 3A J. WIGMORE, EVIDENCE, § 896, pp. 658–660 (Chadbourn ed. 1970); C. McCORMICK, EVIDENCE § 38, pp. 82–83 (1984); M. Ladd, *Impeachment of One's Own Witness—New Developments,* 4 Univ. of Chicago L.Rev. 69 (1936).

**31.** *Supra* note 8, 410 U.S. at 295–297, 93 S.Ct. at 1046. In *Chambers,* the application of Mississippi's voucher rule prevented criminal defense counsel from impeaching his own witness by prior inconsistent statements. At trial, the witness testified that the defendant had committed the crime, but in earlier statements the witness had admitted his own complicity in that offense. The Court held that the *use of the voucher and the hearsay rules in tandem* violated the accused's (Chambers') due process right to a fair trial, since it drastically hampered Chambers' ability to demonstrate to the jury that another person committed the crime. *Chambers* holds that the exclusion of the proffered evidence violated the 6th Amendment's Confrontation Clause. "The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process.' " *Id.,* 410 U.S. at 295, 93 S.Ct. at 1045–1046. The *right of confrontation does not depend upon whether the witness was put on the stand by the accused or by the prosecution. Id.* 410 U.S. at 298, 93 S.Ct. at 1047.

**32.** Unreasoned barriers to admissibility of evidence offend the due process component that protects *one's right to be heard and to offer testimony.* In *Ferguson v. State of Georgia,* 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961), the Court struck down a Georgia statute that limited a defendant's presentation at trial to an unsworn statement as impermissibly denying the accused "the right to have his counsel question him to elicit his statement." *Id.* 365 U.S. at 596,

81 S.Ct. at 770. The 14th Amendment secures the "right of a criminal defendant to choose between silence and testifying in his own behalf." *Id.* 365 U.S. at 602, 81 S.Ct. at 773 (Clark, J., concurring). More recently in *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), the Court noted that

> "[t]he right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.' *Faretta v. California,* 422 U.S. 806, 819, n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975). The *necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty [or property] without due process of law include a right to be heard and to offer testimony:* 'A person's right to reasonable notice of a charge against him, and an *opportunity to be heard in defense*—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.' (Emphasis added.) *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948)."

*Id.* 483 U.S. at 51–52, 107 S.Ct. at 2708–2709. My constitutional philosophy strongly inclines me to the view that *life, liberty and property* must *all* be protected *with equal vigilance.* Due process shields the civil litigants' *right to be heard and to present* testimony with the very same vigor as that which governs in criminal prosecutions.

**33.** *See, e.g., Howard v. Jessup,* Okl., 519 P.2d 913 (1974). Before *Howard,* only declarations against proprietary interests were admissible; declarations against penal interests were not. *Howard,* which makes the latter declarations admissible, shows our own path toward eliminating artificial barriers to admissibility.

*ceptable notion* from the distant past that cross-examination *testimony of every "friendly" witness,* except only when elicited for impeachment, *must be vouched.*[34]

In sum, today's rigid obedience to the § 2611 subcommittee note is contrary to the voucher rule's abrogation in § 2607. In a real sense, the court makes *all* cross-examination testimony of parties called by their opponent "vouchable", except only when sought for impeachment. Section 2607 expressly provides "[t]he credibility of a witness may be attacked by any party, including the party calling him." I would hence give no binding effect to the subcommittee's note upon which today's opinion places its unequivocal imprimatur. I would rather recognize § 2607 as an *absolute abrogation of the voucher rule* that leaves no immortal remnants in its wake. I would hence allow cross-examination to be guided solely by the trial court's discretion and would permit leading questions to the extent *due* and *orderly trial process* may necessitate for rehabilitation of a witness' direct testimony.

### CONCLUSION

To implement the Code's flexibility theme, I would opt today for a § 2611 construction that would allow the use of leading questions not solely for impeachment but also to rehabilitate the adverse party's direct testimony as a witness for the opponent. The court's rigid ban preserves and perpetuates the now *unacceptable notion* of yore that cross-examination testimony of every "friendly" witness must remain "vouchable", except only when sought for impeachment. Because I cannot countenance any residual notions of "vouchability", I would not catapult the § 2611(B) explanatory comment to a rigid and sweeping ban, but would adopt the flexible approach followed by the Rule 611 federal jurisprudence.

---

**34.** Similar evidence-law obstacles that unreasonably impede full disclosure of the truth are an anathema to due process. *See Chambers v. Mississippi, supra* note 8, 410 U.S. at 295, 93 S.Ct. at 1045; *Ferguson v. State of Georgia, supra* note 32; *Davis v. Alaska,* 415 U.S. 308, 317–318, 94 S.Ct. 1105, 1110–1111, 39 L.Ed.2d 347 (1974). In *Davis, supra,* the Court held that a state interest in preserving the confidentiality of juvenile delinquency adjudications *must give way to the defendant's right* to effective cross-examination guaranteed by the 6th Amendment's Con-frontation Clause. In foreclosing the defendant's inquiry into the probation status of the state's only eyewitness, the Court held that the restriction violated Davis' right of confrontation by preventing him from probing into any bias or prejudice which might have caused the witness to fabricate his identification testimony. The Court concluded that the petitioner had been denied a fair trial *because the trial court's ruling prevented him from adequately exposing the jury to facts from which it might infer that the witness was unreliable.*